**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| RAMZI ZINNEKAH, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>GLOBAL LINGUIST SOLUTIONS LLC, et al.,<br><br>　　　　　　　Defendants. | Civil Action No. 1:13cv1185 AJT/JFA |

**DEFENDANT GLOBAL LINGUIST SOLUTIONS LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Jason C. Schwartz, Va. Bar No. 43635
Andrea R. Lucas, Va. Bar No. 82357
Molly T. Senger, Admitted *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
jschwartz@gibsondunn.com
alucas@gibsondunn.com
msenger@gibsondunn.com
Telephone:  202.955.8500
Facsimile:  202.467.0539

*Attorneys for Defendant Global Linguist*
*Solutions LLC*

## TABLE OF CONTENTS

FACTUAL BACKGROUND ............................................................................................ 2

STANDARD OF REVIEW ............................................................................................ 5

ARGUMENT ............................................................................................................ 6

I.     Plaintiffs Have Failed to State a Claim Under the FLSA ........................................ 6

II.    Plaintiffs Have Failed to State a Claim Under Kuwait Labor Law .......................... 8

III.   Plaintiffs Have Failed to State a Claim for Breach of Contract .............................. 11

IV.    Plaintiffs Have Failed to State A Claim for Tortious Interference with
       Contract ............................................................................................................ 15

V.     Plaintiffs Have Failed to State A Claim for Tortious Interference with
       Prospective Economic Advantage ...................................................................... 16

VI.    Plaintiffs Have Failed to State A Claim for Quantum Meruit
       Compensation .................................................................................................. 19

VII.   Plaintiffs Have Failed to State A Claim for Statutory Business
       Conspiracy ...................................................................................................... 21

VIII.  Plaintiffs Have Failed to State a Claim for Negligence and Gross
       Negligence ...................................................................................................... 23

IX.    Plaintiffs Have Failed to State a Claim for False Imprisonment ............................ 25

X.     Plaintiffs Have Failed to State a Claim for Negligent Infliction of
       Emotional Distress ............................................................................................ 27

XI.    Plaintiffs Have Failed to State a Claim for Intentional Infliction of
       Emotional Distress ............................................................................................ 28

XII.   Plaintiffs Have Failed to State a Claim for Injunctive Relief ................................ 30

CONCLUSION ......................................................................................................... 30

# TABLE OF AUTHORITIES

## Cases

*17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*,
    373 F. Supp. 2d 584 (E.D. Va. 2005) ............................................................... 17, 18, 19

*Acordia of Virginia Ins. Agency, Inc. v. Genito Glenn, L.P.*,
    560 S.E.2d 246 (Va. 2002) .............................................................................. 16

*Ainsworth v. Loudon County Sch. Bd.*,
    851 F. Supp. 2d 963 (E.D. Va. 2012) ............................................................. 28, 29

*Allmond v. Sec. 8 Dep't of Hous.*,
    CIV.A. 03-894-A, 2003 WL 23784041 (E.D. Va. Sept. 25, 2003) ..................... 1

*Allmond v. Section 8 Dep't of Hous.*,
    89 F. App'x 392 (4th Cir. 2004) ..................................................................... 1

*Am. Chiropractic v. Trigon Healthcare*,
    367 F.3d 212 (4th Cir. 2004) ........................................................................ 2, 17, 18

*Anderson v. Sara Lee Corp.*,
    508 F.3d 181 (4th Cir. 2007) ......................................................................... 19

*Andrews v. Ring*,
    585 S.E.2d 780 (Va. 2003) .............................................................................. 22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .................................................................................... 6, 13, 18

*Barnes v. Saint Albans Psychiatric Hosp., Inc.*,
    946 F.2d 884, 1991 WL 199865 (4th Cir. Oct. 8, 1991) ................................... 14

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007) .................................................................................... 5, 17, 25

*Bowman v. White*,
    388 F.2d 756 (4th Cir. 1968) ........................................................................ 10

*Buschi v. Kirven*,
    775 F.2d 1240 (4th Cir. 1985) ....................................................................... 22

*Certain Inst. Companies v. J & J Truckin LLC*,
    2:12CV31, 2012 WL 3265098 (E.D. Va. Aug. 9, 2012) ................................... 25

*Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*,
    466 S.E.2d 382 (Va. 1996) .............................................................................. 22

*Chavez v. Johnson*,
    335 S.E.2d 97 (Va. 1985) ............................................................................... 15

*Colgan Air, Inc. v. Raytheon Aircraft Co.*,
    507 F.3d 270 (4th Cir. 2007) ......................................................................... 9

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Cowan v. Hospice Support Care, Inc.,*
  603 S.E.2d 916 (Va. 2004) ........................................................................ 25

*Dejesus v. HF Mgmt. Servs., LLC,*
  726 F.3d 85 (2d Cir. 2013) ........................................................................ 8

*Dellinger v. Sci. Applications Int'l Corp.,*
  649 F.3d 226 (4th Cir. 2011),
  *cert. denied*, 132 S. Ct. 1542, 182 L. Ed. 2d 162 (U.S. 2012) ................ 7

*Elrod v. Busch Entertainment Corp.,*
  Nos. 4:09cv164, 4:09cv165, 4:09cv166, 2010 WL 5620918 (E.D. Va. Dec. 14,
  2010)........................................................................................................... 27

*Fox v. Deese,*
  362 S.E.2d 699 (Va. 1987) ........................................................................ 16

*Gasner v. Cnty. of Dinwiddie,*
  162 F.R.D. 280 (E.D. Va. 1995) ................................................................ 9

*Goldsmith v. Mayor & City Council of Balt.,*
  845 F.2d 61 (4th Cir. 1988) ...................................................................... 10

*Gov't Employees Ins. Co. v. Google, Inc.,*
  330 F. Supp. 2d 700 (E.D. Va. 2004) ........................................................ 18

*GTSI Corp. v. Wildflower Int'l, Inc.,*
  1:09CV123 (JCC), 2009 WL 2160451 (E.D. Va. July 17, 2009) .............. 18

*Harbeck v. Smith,*
  814 F. Supp. 2d 608 (E.D. Va. 2011)......................................................... 26

*Harris v. Kreutzer,*
  624 S.E.2d 24 (Va. 2006) .......................................................................... 29

*Hitachi Credit Am. Corp. v. Signet Bank,*
  166 F.3d 614 (4th Cir. 1999)..................................................................... 9

*Hughes v. Moore,*
  197 S.E.2d 214 (Va. 1973) ........................................................................ 27

*Jones v. Imaginary Images, Inc.,*
  3:12-CV-217, 2012 WL 3257888 (E.D. Va. Aug. 8, 2012)................... 1, 8, 19

*King v. City of Chesapeake,*
  478 F. Supp. 2d 871 (E.D. Va. 2007).......................................................... 27

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ................................................................................... 10

*Lewis-Gale Medical Center, LLC v. Alldredge,*
  710 S.E. 2d 716 (Va. 2011) ....................................................................... 15

*Lion Assocs., LLC v. Swiftships Shipbuilders, LLC,*
  475 F. App'x 496 (4th Cir. 2012)............................................................... 20

**TABLE OF AUTHORITIES** *(continued)*

*Mamo v. BP P.L.C.*,
   1:05CV1323 (JCC), 2006 WL 269056 (E.D. Va. Jan. 30, 2006) ..................................... 30

*Mansfield v. Anesthesia Assocs., Ltd.*,
   No. 1:07cv941 (JCC), 2008 WL 1924029 (E.D. Va. Apr. 28, 2008) .......................... 22, 23

*Michael v. Sentara Health Sys.*,
   939 F. Supp. 1220 (E.D. Va. 1996) .............................................................................. 28, 29

*Michigan Mut. Ins. Co. v. Smoot*,
   128 F. Supp. 2d 917 (E.D. Va. 2000) ................................................................................. 22

*Mongold v. Woods*,
   677 S.E.2d 288 (Va. 2009) ......................................................................................... 20, 21

*Myseros v. Sissler*,
   387 S.E.2d 463 (Va. 1990) ................................................................................................ 28

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ............................................................................... 5, 6, 13

*Ortiz v. Panera Bread Co.*,
   No. 1:10CV1424, 2011 WL 335343 (E.D. Va. Aug. 2, 2011) .................................. 28, 29

*Philips v. Pitt Cnty. Memorial Hosp.*,
   572 F.3d 176 (4th Cir. 2009) .............................................................................................. 2

*Phoenix Renovation Corp. v. Rodriguez*,
   461 F. Supp. 2d 411 (E.D. Va. 2006) ................................................................................ 22

*Robertson v. Prince William Hosp.*,
   No. 1:11–cv–820, 2012 WL 1448101 (E.D. Va. April 25, 2012) ..................................... 27

*Russo v. White*,
   400 S.E.2d 160 (Va. 1991) ................................................................................................ 29

*Schmidt v. Household Fin. Corp., II*,
   661 S.E.2d 834 (Va. 2008) ......................................................................................... 20, 21

*SecureInfo Corp. v. Telos Corp.*,
   387 F. Supp. 2d 593 (E.D. Va. 2005) .......................................................................... 15, 16

*Senture, LLC v. Dietrich*,
   575 F. Supp. 2d 724 (E.D. Va. 2008) ............................................................................ 9, 10

*Shirvinski v. U.S. Coast Guard*,
   No. 1:09-CV-896 AJT TRJ, 2010 WL 4279254 (E.D. Va. Oct. 25, 2010),
   *aff'd*, 673 F.3d 308 (4th Cir. 2012) ...................................... 16, 17, 18, 19, 22, 23

*Souryal v. Torres Adv. Enterp. Solutions, LLC*,
   847 F. Supp. 2d 835 (E.D. Va. 2012) .................................................................................. 7

**TABLE OF AUTHORITIES** *(continued)*

Page(s)

*Stoney Glen, LLC v. S. Bank & Trust Co.*,
   --- F. Supp. 2d ----, 2013 WL 1897111 (E.D. Va. May 2, 2013),
   *clarified on denial of reconsid.*, 2:13CV8-HCM-LRL, 2013 WL 4539736
   (E.D. Va. Aug. 27, 2013) ................................................................................ 14

*Sykes v. Bayer Pharm. Corp.*,
   548 F. Supp. 2d 208 (E.D. Va. 2008).............................................................. 25

*Taha v. L3 Comm'cns Corp.*,
   No. 1:09cv720 (JCC), 2009 WL 3837278 (E.D. Va. Nov. 13, 2009)................. 6

*Tate v. Atlanta Oak Flooring Co.*,
   18 S.E.2d 903 (Va. 1942) .................................................................................. 1

*Tohotcheu v. Harris Teeter, Inc.*,
   1:11-CV-767, 2011 WL 5873074 (E.D. Va. Nov. 22, 2011)............................. 24

*Walker v. Serv. Corp. Int'l*,
   No. 4:10CV00048, 2011 WL 1370575 (W.D. Va. Apr. 12, 2011) ...................... 8

*Whitlock v. Street*, Civ. A. No. 3:12-CV-95-HEH, 2012 WL 3686434 (E.D. Va. Aug.
   24, 2012)......................................................................................................... 26

*Witthohn v. Fed. Ins. Co*,
   164 Fed. App'x 395 (4th Cir. 2006) .................................................................. 4

**Statutes**

29 U.S.C. § 213(f)............................................................................................... 6, 7

Va. Code. Ann. §§ 18.2-499 *et seq.* .................................................................... 22

**Rules**

Fed. R. Civ. P. 10(c) ............................................................................................. 2

Fed. R. Civ. P. 12(b)(6).......................................................................................... 5

Fed. R. Civ. P. 44.1 ............................................................................................... 9

This case arises from the actions of two non-parties: the sovereign government of Kuwait and the Kuwaiti company Al Shora International General Trading & Contracting Company ("Al Shora"), which formerly served as Plaintiffs' local "sponsor" in Kuwait.  Plaintiffs were employed by Global Linguist Solutions LLC ("GLS")[1] as linguists in Kuwait, and Al Shora, as GLS's subcontractor, was tasked with providing immigration-related services for Plaintiffs. After GLS entered into a new contract with the U.S. Government and Al Shora refused to submit a bid to work under that contract, GLS initiated a legal, rightful process to transfer its employees' sponsorship from Al Shora to a new local sponsor.  Al Shora responded by openly initiating a campaign to "destroy" GLS and "blacklist" GLS's employees from Kuwait—a campaign that resulted in certain Plaintiffs being arrested and "thrown into Kuwaiti prisons" and other Plaintiffs allegedly being "trapped" on U.S. military bases.  There is no dispute that Plaintiffs (and GLS) suffered as a result of Al Shora's misconduct; however, none of that suffering is attributable to any misconduct on the part of GLS.  To the contrary, GLS worked tirelessly over the past nine months to ensure that all of its linguists—including Plaintiffs—were able to safely leave Kuwait. And GLS succeeded in its efforts: as of this date, all 25 Plaintiffs—and all of GLS's other linguists in Kuwait—have been able to return to the United States.  Moreover, some of these linguists have since voluntarily re-deployed to Kuwait to work for GLS under its new sponsor.

---

[1] Plaintiffs purport to bring claims against both Global Linguist Solutions LLC *and* a separate "unincorporated joint venture between DynCorp and AECOM" known only as "Global Linguist Solutions." Am. Compl. ¶¶ 3-4. However, there is no "unincorporated joint venture" entity known as Global Linguist Solutions; the only Global Linguist Solutions of which undersigned counsel is aware (and the only entity that undersigned counsel represents) is Global Linguist Solutions *LLC*—a limited liability company formed under Delaware law. *Id.* ¶ 40. Because there is no unincorporated joint venture known only as Global Linguist Solutions, no such entity can be sued. *See Allmond v. Sec. 8 Dep't of Hous.*, CIV.A. 03-894-A, 2003 WL 23784041, at *2 (E.D. Va. Sept. 25, 2003) (explaining that "[a]n entity that does not exist cannot be sued"), *aff'd sub nom. Allmond v. Section 8 Dep't of Hous.*, 89 F. App'x 392 (4th Cir. 2004).  Nor does Global Linguist Solutions LLC's occasional use of shorthand in referring to itself as "Global Linguist Solutions" or "GLS" somehow serve to create a separate, cognizable legal entity; to the contrary, the use of such a shorthand merely "allows a single entity to operate under multiple names." *Jones v. Imaginary Images, Inc.*, 3:12-CV-217, 2012 WL 3257888, at *7 (E.D. Va. Aug. 8, 2012) (citing *Tate v. Atlanta Oak Flooring Co.*, 18 S.E. 2d 903 (Va. 1942)).

Nevertheless, on November 12, 2013, Plaintiffs filed an Amended Complaint against

GLS, DynCorp International LLC ("DynCorp") and AECOM National Security Programs, Inc.

("AECOM NSP"), purportedly on their own behalf and on behalf of all others "similarly

situated," alleging more than twelve claims under the Fair Labor Standards Act ("FLSA"),

Kuwait Labor Law, and Virginia common law.  Although Plaintiffs have restyled their

allegations, Plaintiffs' Amended Complaint—like their Original Complaint—fails to state any

viable cause of action against GLS, and should be dismissed in its entirety under Rule 12(b)(6).

## FACTUAL BACKGROUND

Defendant GLS provides translation and interpretation services to the U.S. military in

Kuwait pursuant to a contract with the U.S. Army Intelligence and Security Command

("INSCOM"), known as the Defense Language Interpretation Translation Enterprise ("DLITE")

Contract.  Am. Compl. (Dkt. 1) ¶¶ 44-45.  Plaintiffs are all linguists who either currently work or

have worked for GLS in Kuwait pursuant to the DLITE Contract.  *See* Am. Compl. ¶ 45.

Prior to commencing their employment with GLS, all 25 of the Plaintiffs[2] signed—and

initialed each page of—virtually identical individual employment agreements with GLS.  *See*

Foreign Service Agreements, Ex. 1;[3] Am. Compl. ¶¶ 5-29.  These Foreign Service Agreements

("FSAs") make clear that Plaintiffs are at-will employees, and that GLS has the right "at its sole

discretion" to terminate its employment relationship with Plaintiffs "without cause at any time."

---

[2] One of the Named Plaintiffs, Maryan Mure, was never an employee of GLS under the DLITE Contract and left GLS's employ long before the dispute with Al Shora arose.  *See* Foreign Service Agreements, Ex. 1, Mure FSA at 1 ¶ 1 (noting that Mure worked under the Management and Support of Translation and Interpretation Services in Support of OIF Contract).  Accordingly, all claims asserted by Plaintiff Mure should be dismissed.

[3] In analyzing a motion to dismiss, a court may consider documents attached to the motion without converting the motion into a motion for summary judgment where, as here, the documents are integral to and explicitly relied on in the complaint.  *See* Fed. R. Civ. P. 10(c); *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Because Plaintiffs specifically refer to and rely on their Foreign Service Agreements in the Amended Complaint, and because these Foreign Service Agreements are central to Plaintiffs' claims, it is appropriate for the Court to consider these Agreements in analyzing GLS's motion to dismiss.  *See* Am. Compl. ¶¶ 5-29; *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 223-24 (4th Cir. 2004).

FSAs, Ex. 1 at 8 ¶ 16(a)-(b).  The FSAs further specify that Plaintiffs "must meet all host nation immigration labor requirements to work in the host nation," and that, in the event a Plaintiff "does not meet the minimum requirement to work in the host nation then this is grounds for termination for cause . . . ."  *Id.* at 6 ¶ 12.  The FSAs go on to state that they are to be "governed by and interpreted under the laws of the Commonwealth of Virginia," *id.* at 11 ¶ 9—the state where Plaintiffs' employer, GLS, is headquartered.  *See* Am. Compl. ¶ 4.  Plaintiffs' FSAs all became effective as of February 2013.  *See* FSAs, Ex. 1 at 1 ¶ 1, 10 ¶ 1.

Under their FSAs, Plaintiffs began "employment and earning full salary upon the day of their arrival in Kuwait for in-theater assignment."  *Id.* at 1 ¶ 3(c); *see id.* at 10 ¶ 3(a).  The FSAs explain that Plaintiffs were hired for "a salaried position," and that while the "standard work schedule shall be 12 hours per day, 6 days per week," the "scheduling of work hours may be more or less than 72 hours per week, at the sole discretion of [GLS]."  *Id.* at 11 ¶ 6; *see id.* at 10 ¶ 3(a).  The FSAs also inform Plaintiffs that "due to the circumstances that are likely to exist" in Kuwait, it is "possible that [their] assignment . . . will entail some degree of personal hardship and danger."  *Id.* at 4 ¶ 10(a).  The FSAs advise that the Plaintiffs' "assignment location may continue to have the potential for instability from a security perspective," that "this assignment carries the risk of bodily harm/death," and that "[l]iving conditions at the assignment location could be remote and uncomfortable."  *Id.* at 4 ¶ 10(a)(1)-(2).  By signing and initialing their FSAs, Plaintiffs made "an affirmative indication" of their willingness to accept their assignment, and affirmatively indicated that they understood "the difficult and potentially dangerous conditions that might accompany such an assignment."  *Id.* at 5 ¶ 10(b); *see also id.* at 5 ¶ 10(c).

Prior to commencing employment in Kuwait, Plaintiffs allege that they completed pre-deployment processing and training in the United States.  *See* Am. Compl. ¶ 46.  Consistent with

the provision in their current FSAs specifying that "[t]he Employee begins employment and earning full salary upon the day of their arrival in Kuwait for in-theater assignment," FSAs, Ex. 1 at 1 ¶ 3(c), Plaintiffs allege that they did not receive wages during this time.  *See* Am. Compl. ¶¶ 46, 48, 94.  Once overseas, Plaintiffs allege that they were "routinely require[d] . . . to perform more than forty-eight (48) hours of their week in service to Defendant."  *Id.* ¶¶ 62, 103.

Kuwaiti law requires GLS, as a foreign company doing business in Kuwait, to retain a local "agent" to sponsor GLS's employees and provide them with visa and immigration-related services.  *See id.* ¶¶ 63-64.  In December 2009, GLS entered into a sponsorship relationship with the Kuwaiti company Al Shora.  *See* GLS-Al Shora Subcontract, Ex. 2[4]; Am. Compl. ¶ 65.  Plaintiffs allege that Al Shora then "entered into individual employment contracts with Plaintiffs so as to fulfill its role as the local sponsor of Plaintiffs' employment inside of Kuwait."  *Id.* ¶ 66.

At the beginning of 2013, GLS ended its relationship with Al Shora.  *Id.* ¶ 67.  Plaintiffs allege that this termination was "[i]nconsistent with Kuwait law."  *Id.*  GLS's subcontract with Al Shora, however, included the standard U.S. Government termination-for-convenience clause, which provides that GLS "may terminate performance of work under this [subcontract] in whole or . . . in part, if" GLS "determines that a termination is in [GLS's] interest."  GLS-Al Shora Subcontract, Ex. 2 at 46-47, I.I1 (incorporating 48 C.F.R. § 52.249-6(a) (2013)).  Under the Subcontract, Al Shora agreed to "transfer sponsorship services from the previous sponsor *as soon as possible*" "[w]hen/if required and requested by GLS."  Section C.1.0(i) of GLS-Al Shora Subcontract, Ex. 2 at 26 (emphasis added).  Al Shora, however, did not comply with its contractual transfer obligation after receiving notice of GLS's termination of the subcontract.

---

[4]  The Court may review the GLS-Al Shora Subcontract in analyzing this Motion.  Plaintiffs' Amended Complaint references the Subcontract and the terms of the Subcontract are directly relevant to Plaintiffs' sponsorship in Kuwait.  *See* Am. Compl. ¶¶ 63-72, 125; *Witthohn v. Fed. Ins. Co*, 164 Fed. App'x 395, 396-97 (4th Cir. 2006).

Instead, Al Shora contacted "Kuwait Government authorities" and falsely asserted "that GLS was not in compliance with Kuwait law."  Am. Compl. ¶ 71.

Plaintiffs allege that as a result of Al Shora's unfounded assertions, "Kuwaiti Government officials began arresting certain Plaintiffs."  *Id.* ¶¶ 73, 78-82.  They claim that certain Plaintiffs were "held in Kuwait's jails for seven days."  *See id.* ¶¶ 78, 80-81, 165.  Plaintiffs also assert that certain Plaintiffs were placed on administrative leave without pay upon their return to the United States, given their inability to continue working for GLS in Kuwait.  *See id.* ¶¶ 118.  Plaintiffs allege that the remaining GLS linguists in Kuwait were "confined to a U.S. military base"—their regular living and working locations—as a result of the "the representation by GLS that they would be arrested by Kuwaiti authorities if they left the U.S. military base."  *Id.* ¶ 166.  Plaintiffs also allege that the Kuwait Government has "blacklisted" them from working in Kuwait and other Gulf States.  *See id.* ¶¶ 132, 134-136.  Plaintiffs do not, however, assert that this "blacklisting" resulted from any contact that GLS had with the Kuwait Government or prospective employers in the Gulf States.

## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must dismiss a complaint that fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A complaint fails to state a claim if the plaintiff does not allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253, 255-56 (4th Cir. 2009).  In order to meet this plausibility standard, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Accordingly, a plaintiff must plead sufficient "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Moreover, a court must accept as true only "well-pled facts" and "construe[] these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet*, 591 F.3d at 255.  "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Id.*  Likewise, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* at 253.

## ARGUMENT

### I.    Plaintiffs Have Failed to State a Claim Under the FLSA

Plaintiffs have failed to state a claim under the FLSA because the FLSA does not govern work performed outside the United States.  Under the terms of their FSAs, Plaintiffs' employment with GLS did not begin until "the day of their arrival in Kuwait for in-theater assignment." FSAs, Ex. 1 at 1 ¶ 3(c); *see id.* at 10 ¶ 3(a).  The FSAs also specify that they "pertain[] to work in **Kuwait**" and that the "primary place of duty is **Kuwait**." *Id.* at 10 ¶¶ 1-2 (emphasis in original).  The minimum wage, maximum hours, and overtime requirements of the FLSA do not govern employees "whose services during the workweek are performed in a workplace within a foreign country . . . ." *See* 29 U.S.C. § 213(f).  Because all of the services performed by Plaintiffs pursuant to their employment with GLS were performed within a foreign country, Plaintiffs are not entitled to assert a claim for unpaid wages under the FLSA. *See, e.g.*, *Taha v. L3 Comm'cns Corp.*, No. 1:09cv720 (JCC), 2009 WL 3837278, at *3 (E.D. Va. Nov. 13, 2009) (granting motion to dismiss FLSA claims where "Plaintiffs' Complaint repeatedly states that the work done by Plaintiffs performing under their contract was done 'in *Iraq*'").

Plaintiffs cite their FSAs' inclusion of a choice-of-law provision "requiring the application of either United States law, or that of one of its states and/or territories" in support of

their claim that they are entitled to the protections of the FLSA for time worked outside the

United States.  *See* Am. Compl. ¶¶ 90, 94.  In actuality, Plaintiffs' FSAs do not contain a general

United States choice-of-law provision, but a more specific Virginia choice-of-law provision,

which states that Plaintiffs' employment is governed by "the law of the Commonwealth of

Virginia of the United States of America." *Id.* ¶ 56; *see also id.* ¶ 55.  Regardless, the inclusion

of this provision *undermines* Plaintiffs' claim, since the FLSA—as the governing United States

law—provides that it *does not apply* to work performed abroad.  *See* 29 U.S.C. § 213(f); *see also*

*Souryal v. Torres Adv. Enterp. Solutions, LLC*, 847 F. Supp. 2d 835, 842 (E.D. Va. 2012).

        To the extent that Plaintiffs maintain they are entitled to bring a claim under the FLSA

based on GLS's alleged failure to compensate them during pre-deployment "processing" and

"training" that occurred in the United States, Am. Compl. ¶¶ 46, 48, 59, 90, 94, that claim, too,

fails as a matter of law.  The Fourth Circuit has held that "only *employees* can sue their current or

former employers . . . under the FLSA," and a mere applicant or prospective employee—even

one whose employment has "been approved on a contingent basis"—is not an employee entitled

to the protections of the FLSA.  *See Dellinger v. Sci. Applications Int'l Corp.*, 649 F.3d 226, 228

(4th Cir. 2011), *cert. denied*, 132 S. Ct. 1542, 182 L. Ed. 2d 162 (U.S. 2012) (emphasis added).

Because Plaintiffs "begin[] Employment [with GLS] . . . upon the day of their arrival in Kuwait

for in-theater assignment," FSAs, Ex. 1 at 1 ¶ 3(c), Plaintiffs were not GLS employees at the

time of their alleged pre-deployment processing and training in the United States.  At the time,

Plaintiffs had not performed any work for GLS, and it was possible that Plaintiffs would never

receive the clearance from the U.S. Government or the visas from the Kuwait Government

needed to work for GLS in Kuwait.  As mere *prospective* employees, Plaintiffs were not covered

by the FLSA.  *See Dellinger*, 649 F.3d at 229 (explaining that "an applicant" who had not

"beg[u]n or performed any work could not, by the language of the FLSA, be an 'employee'").

Even if Plaintiffs could be considered GLS "employees" during the time they allegedly participated in training in the United States—despite the express language in their FSAs to the contrary—Plaintiffs still have failed to properly plead an FLSA claim.  Courts in the Fourth Circuit have held that a plaintiff asserting an FLSA claim for unpaid wages must—at a minimum—"disclose 'where [the plaintiff] worked . . . [and] what [his] dates of employment were.'"  *Walker v. Serv. Corp. Int'l*, No. 4:10CV00048, 2011 WL 1370575, at *7 (W.D. Va. Apr. 12, 2011) (citation omitted).  Here, Plaintiffs' sole allegations with respect their pre-deployment training is that they were required to undergo such training at various "facilities located in the United States," Am. Compl. ¶ 46, and that two of the named Plaintiffs participated in such training in 2012 in Northern Virginia and Indiana, respectively, *id.* ¶ 94.  With respect to the remaining Plaintiffs, the Amended Complaint is devoid of any allegations as to the dates of their alleged training, the purported amount of hours in excess of forty per week that were worked during training, or the locations where the alleged training occurred.  Absent such allegations, Plaintiffs' FLSA claim must be dismissed.  *See, e.g., Jones v. Imaginary Images, Inc.*, Action No. 3:12-CV-217, 2012 WL 3257888, at *11 (E.D. Va. Aug. 8, 2012) (dismissing FLSA claim where the plaintiff "fail[ed] to indicate . . . the number of hours he worked without compensation"); *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89-90 (2d Cir. 2013) (affirming dismissal of claim for unpaid overtime under the FLSA where the plaintiff "did not estimate her hours in any or all weeks or provide any other factual context or content").

## II.   Plaintiffs Have Failed to State a Claim Under Kuwait Labor Law

Plaintiffs also have failed to state a claim for violation of Article 64 of the New Private Sector Labour Law of Kuwait, Law 6 of 2010 (Kuwait) ("Kuwait Labor Law").  *See* Kuwait

Labor Law, Ex. 3.[5]  As Plaintiffs concede, their employment with GLS is governed by FSAs that

"require[] the application of . . . United States law." Am. Compl.¶ 90.  In particular, Plaintiffs'

employment agreements state that they "shall be *governed by and interpreted under* the laws of

the Commonwealth of Virginia of the United States of America."  FSAs, Ex. 1 at 11 ¶ 9

(emphasis added).  "Virginia law looks favorably upon choice of law clauses in a contract,

giving them full effect except in unusual circumstances."  *Hitachi Credit Am. Corp. v. Signet

Bank*, 166 F.3d 614, 624 (4th Cir. 1999); *see also Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507

F.3d 270, 275 (4th Cir. 2007).  Thus, "'absent a showing that the provisions of the clause 'are

unfair or unreasonable, or are affected by fraud or unequal bargaining power, or that the parties

did not clearly intend for the designated law to govern the terms of the contract," courts applying

Virginia law "will give full force to choice-of-law provision[s] in a contract." *Senture, LLC v.

Dietrich*, 575 F. Supp. 2d 724, 727 (E.D. Va. 2008) (internal citations omitted).

Plaintiffs here have not alleged that the Virginia choice-of-law provision in their FSAs is

somehow "unfair or unreasonable"—nor could they.  GLS is headquartered in Virginia, and it is

perfectly reasonable for GLS to select Virginia law to govern its employment relationship with

its linguists.  *See Senture*, 575 F. Supp. 2d at 727 (upholding company's choice of Kentucky law

to govern employment contract where the company chose Kentucky law "because of [its] strong

ties to Kentucky").  Plaintiffs also have not alleged that GLS's choice of Virginia law was in any

way fraudulent or the result of "unequal bargaining power."  The mere fact that the contract at

issue is an employment contract does not mean that it was characterized by unequal bargaining

power sufficient to invalidate a clearly-expressed, reasonable choice-of-law provision.  *See id.* at

---

[5]  As Plaintiffs explicitly reference, quote, and rely on Kuwait Labor Law in Count II, the Court may consider the
official English translation of Kuwait Labor Law (attached as Exhibit 3) at the motion to dismiss stage.  *See* Am.
Compl. ¶¶ 101-04; *Gasner v. Cnty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995); Fed. R. Civ. P. 44.1.

727 n.1 (rejecting the argument that "employment agreements are always 'adhesion contracts'" as not supported by Virginia law, and "not deserving of great attention by the Court"). Plaintiffs' employment is thus governed by the law of Virginia—not the law of Kuwait.[6]

Even assuming that the terms and conditions of Plaintiffs' employment were governed by the law of Kuwait—which they are not—Kuwait Labor Law does not create a private right of action that would permit Plaintiffs to prosecute alleged violations of Kuwait Labor Law in federal district courts. To the contrary, Kuwait Labor Law provides that prior to the filing of a lawsuit, a worker must file an application with the "competent Labor Department," which will then "summon" the parties for settlement discussions. *See id.*, Art. 146. Only if the parties are unable to settle their dispute will the Labor Department then refer the case to the Court of First Instance in Kuwait. *See id.* Plaintiffs here have not alleged that they followed the proper procedures with respect to filing an application with the competent Labor Department, or that they participated in settlement discussions with GLS in Kuwait. Nor have Plaintiffs cited any provision of Kuwait Labor Law that would enable them to forego this process in favor of bringing their claim directly in this Court. For all these reasons, Count II must be dismissed.[7]

---

[6]   Plaintiffs are incorrect that they may assert claims under Kuwait Labor Law simply because GLS's subcontract with Al Shora states that "U.S. hires would be subject to Kuwait law while in Kuwait." *See* Am. Compl. ¶ 104. The relevant provision of the GLS-Al Shora Subcontract provides that "GLS employees (U.S. hires) under Alshora sponsorship . . . will respect, abide by, and follow the Kuwaiti laws and regulations during the period that the employee(s) are deployed to and sponsored by Alshora in Kuwait." *See* GLS-Al Shora Subcontract, Ex. 2, ¶ A36. The fact that GLS employees in Kuwait must abide by local Kuwaiti laws does not mean that the terms and conditions of their employment are governed by Kuwaiti laws—especially where, as here, Plaintiffs' employment contracts contain a clear Virginia choice-of-law provision, *see* FSAs, Ex. 1 at 11 ¶ 9.

[7]   Plaintiffs additionally have failed to set forth any jurisdictional basis upon which this Court could adjudicate an alleged violation of Kuwait Labor Law that transpired in Kuwait. "Federal courts are courts of limited jurisdiction," and "[t]hey "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Moreover, "'the burden is on the party asserting the jurisdiction of the court to show that jurisdiction does, in fact, exist.'" *Goldsmith v. Mayor & City Council of Balt.*, 845 F.2d 61, 63-64 (4th Cir. 1988) (quoting *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968)). Here, Plaintiffs simply assert that this Court possesses subject matter jurisdiction "over this action as it alleges violations of the [FLSA], a federal law," and because there is "subject matter diversity jurisdiction pursuant to 28

*(Cont'd on next page)*

### III.      Plaintiffs Have Failed to State a Claim for Breach of Contract

In Count III, Plaintiffs allege that GLS breached its employment agreements with

Plaintiffs in nine ways.  All of these alleged contractual breaches fail as a matter of law.

Plaintiffs' first claim—that GLS "failed to meet [its] [contractual] obligation . . . to

provide the bargained for [sic] housing for Plaintiffs"—is undermined by Plaintiffs' own

allegations.  Under the terms of Plaintiffs' FSAs, GLS agreed to "provide all lodging/housing"

for Plaintiffs in Kuwait.  *See* FSAs, Ex. 1 at 2 ¶ 3(f)(1).  In their Amended Complaint, Plaintiffs

do not allege that GLS failed to provide them with housing; rather, Plaintiffs allege only that

their *as-provided* housing was unsatisfactory.  *See* Am. Compl. ¶ 111.  But as Plaintiffs

themselves admit, their FSAs stated that the "manner with which the employee will be housed is

at the discretion of the employer."  *Id.* ¶ 10.  Moreover, nowhere in Plaintiffs' FSAs did GLS

guarantee that Plaintiffs would be provided with optimal housing.  To the contrary, the FSAs

made clear that the "[l]iving conditions at the assignment location could be *remote and*

*uncomfortable*."  FSAs, Ex. 1, at 4 ¶ 10(a)(1)-(2) (emphasis added).  Plaintiffs cannot state a

claim for breach of contract based on allegedly poor housing conditions, where GLS's sole

contractual obligation was to provide them with *some* form of housing—which GLS did—and

Plaintiffs' FSAs expressly warned them that their living conditions could be uncomfortable.

Plaintiffs' second breach-of-contract claim—that GLS breached its FSAs with Plaintiffs

by failing to obtain their permission "to deduct the cost of payroll expenses incurred by Al Shora

from Plaintiffs [sic] paychecks," Am. Compl. ¶ 112—likewise fails.  Plaintiffs' FSAs do not

require Plaintiffs' authorization for all paycheck deductions.  Instead, the FSAs provide that GLS

---

*(Cont'd from previous page)*

U.S.C. § 1332(a)(2)."  *See* Am. Compl. ¶¶ 32-33.  Plaintiffs cite no statutory basis for the Court's assertion of
subject matter jurisdiction over their freestanding claim under Kuwait Labor Law—and there is none.

is authorized to make paycheck deductions that "include, but are not limited to" deductions for "personal checks for which [GLS] paid on behalf of the Employee." *See* FSAs, Ex. 1 at 2 ¶ 3(h). GLS thus is contractually authorized to make deductions for expenses aside from those that are enumerated.  Accordingly, Plaintiffs' claim that GLS breached its contracts with Plaintiffs by deducting payroll expenses incurred by Al Shora without authorization must be dismissed.

Similarly, Plaintiffs' third breach-of-contract claim—that GLS breached its employment agreements with Plaintiffs because Plaintiffs "were not allowed to take Part [sic] Time Off," Am. Compl. ¶ 113—is not supported by the text of Plaintiffs' FSAs.  The FSAs specify that Plaintiffs shall "accrue PTO on a biweekly basis," but they go on to state "[t]he *actual taking of PTO* will be approved by the Customer, Site Manager, Project Manager, or other designee."  FSAs, Ex. 1 at 3 ¶ 6 (emphasis added).  Because GLS had no contractual obligation to approve Plaintiffs' requests to take PTO, Plaintiffs' allegation that they "were not allowed to take Part [sic] Time Off," Am. Compl. ¶ 113, fails to state a valid breach of contract claim against GLS.

In their fourth breach-of-contract claim, Plaintiffs allege that GLS violated its contractual obligation to provide Plaintiffs with transportation out of Kuwait.  *See id.* ¶ 114.  But again, under the terms of Plaintiffs' FSAs, GLS does not have an unqualified obligation to provide Plaintiffs with transportation out of Kuwait immediately upon their request for "curtailment of [their] assignment."  FSAs, Ex. 1 at 3 ¶ 7(b).  In fact, the FSAs expressly warned Plaintiffs that "[t]ravel could be significantly restricted, delayed or made more difficult by operational requirements of the military or by restrictions imposed by civil authorities . . . ."  *Id.* at 4 ¶ 10(a)(5).  Because GLS was under no contractual duty to provide for Plaintiffs' immediate transportation out of Kuwait upon their request—especially where, as here, there were "restrictions imposed by civil authorities" beyond GLS's control—Plaintiffs' claim that GLS

breached its contracts by failing to provide them with such transportation is meritless.

With respect to their fifth and sixth breach-of-contract claims, Plaintiffs have done no more than make "bare assertions" and set forth "legal conclusions . . . devoid of further factual enhancement." *Nemet*, 591 F.3d at 255.  Plaintiffs assert that GLS breached the provision of their FSAs which states that employees "'will receive all day-to-day working directions and required support from [their] supervisor.'" Am. Compl. ¶ 115; *see also* FSAs, Ex. 1 at 3 ¶ 8. According to Plaintiffs, GLS breached this provision by "often provid[ing] no day-to-day direction for Plaintiffs," and by failing "in its obligation to provide support that was needed." Am. Compl. ¶ 115.  However, Plaintiffs provide no further "factual enhancement" regarding the nature of the day-to-day directions or support that was allegedly lacking, or the identity of the supervisors who allegedly failed to provide such directions and support.  Likewise, in their sixth breach-of-contract claim, Plaintiffs assert—without any factual support—that GLS breached its contracts with Plaintiffs because Plaintiffs' employment was intended to be "voluntary," but "became involuntary when they were denied the opportunity to leave Kuwait." *Id.* ¶ 116.  But Plaintiffs fail to cite any provision in their FSAs that GLS breached, and further fail to provide any "factual content" that would allow the Court to conclude that GLS somehow made Plaintiffs' employment "involuntary."  *See Iqbal*, 556 U.S. at 678.  To the contrary, Plaintiffs contend elsewhere in their Amended Complaint that they were not *able* to work, not that they were forced to work involuntarily.  *See, e.g.*, Am. Compl. ¶ 128.  These claims thus must be dismissed.

In their seventh breach-of-contract claim, Plaintiffs assert that GLS violated its contractual obligation to maintain Plaintiffs' lawful immigration status.  *See id.* ¶ 117. Significantly, however, under their FSAs, it is *Plaintiffs'* obligation—not GLS's obligation—to ensure that Plaintiffs "meet all host nation immigration labor requirements to work in the host

nation." FSAs, Ex. 1, at 6 ¶ 12.  Indeed, the FSAs provide that if a Plaintiff "does not meet the

minimum requirement to work in the host nation then this is grounds for termination for cause."

*Id.*  Given this language, Plaintiffs cannot plausibly maintain that GLS breached its "contractual

obligation to ensure the legality of Plaintiffs [sic] immigration status."  Am. Compl. ¶ 117.

      With respect to Plaintiffs' eighth breach-of-contract claim—that GLS breached its

contracts with certain Plaintiffs by placing them on administrative leave without pay, *id.* ¶ 118—

this claim also fails as a matter of law.  Plaintiffs are at-will employees, meaning that they can be

terminated or placed on administrative leave without pay by GLS at any time.  *See* FSAs, Ex. 1

at 8 ¶ 16(a)-(b); *see also Barnes v. Saint Albans Psychiatric Hosp., Inc.*, 946 F.2d 884, 1991 WL

199865, at *2 (4th Cir. Oct. 8, 1991) (explaining that "[b]ecause the employer can terminate an

at-will employee at any time, it follows that an employer can, simply on notice, also unilaterally

reduce the salary of an at-will employee").  Because GLS would have been fully within its rights

to terminate Plaintiffs' employment, given their status as at-will employees, it could also take

lesser action, by placing some Plaintiffs on administrative leave without pay.

      In their final breach-of-contract claim, Plaintiffs allege that GLS breached a "duty of

good faith and fair dealing that is commensurate with [GLS's] specific contractual obligations."

Am. Compl. ¶ 19.  Under Virginia law, the duty of good faith and fair dealing may be breached

only if (1) a party's conduct in the exercise of its contractual rights is dishonest, or (2) a party's

exercise of contractual discretion is arbitrary or unfair.  *See Stoney Glen, LLC v. S. Bank & Trust

Co.*, --- F. Supp. 2d ----, 2013 WL 1897111, at *5 (E.D. Va. May 2, 2013), *clarified on denial of

reconsid.*, 2:13CV8-HCM-LRL, 2013 WL 4539736 (E.D. Va. Aug. 27, 2013).  Here, Plaintiffs

allege that GLS breached a duty of good faith and fair dealing by providing Plaintiffs with poor

housing; by "abandon[ing]" them; and by "disregard[ing] . . . [its] obligation to move Plaintiffs

out of Kuwait upon request." Am. Compl. ¶ 119. But Plaintiffs have not alleged that GLS acted "arbitrarily or unfairly" by providing poor housing to Plaintiffs, or by failing to transport them out of Kuwait in light of the restrictions imposed by civil authorities. Plaintiffs also have asserted no facts to support their conclusory allegation that GLS somehow "abandoned" them. For all these reasons, Plaintiffs' final breach-of-contract claim also fails as a matter of law.

## IV.     Plaintiffs Have Failed to State A Claim for Tortious Interference with Contract

Plaintiffs fail to state a claim for tortious interference with contract because, as alleged, Plaintiffs effectively seek to hold GLS liable for "interfering" with its own contracts. Under Virginia law, a claim for tortious interference with contract requires the plaintiff to show that (1) there was a valid contractual relationship or business expectancy between the plaintiff and a third party; (2) the defendant knew of that relationship or expectancy; (3) the defendant intentionally interfered with that relationship or expectancy, inducing or causing its breach or termination; and (4) the plaintiff was damaged as a result. *See Lewis-Gale Medical Center, LLC v. Alldredge*, 710 S.E. 2d 716, 720 (Va. 2011) (citing *Chavez v. Johnson*, 335 S.E. 2d 97, 102 (Va. 1985)). Thus, under Virginia law, "a person or entity cannot [tortiously] interfere with his, her, or its own contract." *SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 618 (E.D. Va. 2005).

Here, Plaintiffs have failed to point to any contract between themselves and a third party with which GLS purportedly interfered. Plaintiffs assert that GLS tortiously interfered with their individual contracts with Al Shora by severing its own agreement with Al Shora, resulting in Al Shora's termination of its contracts with Plaintiffs. *See* Am. Compl. ¶¶ 125-26. But Plaintiffs also allege that Al Shora was GLS's "Kuwaiti agent" as a result of GLS "entering into a sponsorship relationship" with Al Shora. *Id.* ¶¶ 63-65. Likewise, Plaintiffs allege that Al Shora acted within the scope of its agency relationship with GLS when entering into contracts with Plaintiffs. *See id.* ¶ 66 ("Al Shora entered into individual employment contracts with Plaintiffs

15

so as to fulfill its role as the local sponsor of Plaintiffs' employment inside of Kuwait.").  "When an agent, acting within the scope of the apparent agency, enters into a contract with a third person, the principal becomes immediately a contracting party."  *Acordia of Virginia Ins. Agency, Inc. v. Genito Glenn, L.P.*, 560 S.E.2d 246, 251 (Va. 2002) (internal quotation marks and citations omitted).  The agent's contract is thus the principal's contract.  *Id.*  Since Plaintiffs allege that Al Shora entered into its contracts with Plaintiffs as GLS's agent, Al Shora's "contract[s] [are] also [GLS's] contract[s], and [GLS] could not interfere with [them]."  *Fox v. Deese*, 362 S.E.2d 699, 704 (Va. 1987); *see SecureInfo Corp.*, 387 F. Supp. 2d at 618.  Plaintiffs thus cannot state a claim against GLS for tortious interference with contract.

## V.   Plaintiffs Have Failed to State A Claim for Tortious Interference with Prospective Economic Advantage

Plaintiffs have failed to state a claim for tortious interference with prospective economic advantage because (1) they do not—and cannot—allege that GLS and Plaintiffs are in a competitive relationship and (2) Plaintiffs' allegations with respect to each of the other elements of this tort do not meet the plausibility standard required by *Twombly* and *Iqbal*.

In order to state a claim for tortious interference with prospective economic advantage, a plaintiff must plead that: (1) a "business relationship or expectancy, with a probability of economic benefit" existed; (2) the defendant knew about the relationship or expectancy; (3) there was a "reasonabl[e] certain[ty] absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy"; (4) the interference damaged the plaintiff; and (5) the defendant used "improper means" to interfere with the prospective economic advantage.  *Shirvinski v. U.S. Coast Guard*, No. 1:09-CV-896 AJT TRJ, 2010 WL 4279254, at *6 (E.D. Va. Oct. 25, 2010), *aff'd*, 673 F.3d 308 (4th Cir. 2012).  Courts in this district also have recognized two additional elements of this tort: namely, there must be (6) a competitive relationship between

16

the party interfered with (the plaintiff) and the alleged interferer (the defendant); and (7) contact between the defendant and the source of the plaintiff's business expectancy. *Id.; see also 17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 600-01 (E.D. Va. 2005).

Here, Plaintiffs claim that GLS tortiously interfered with their business expectancy of future employment as linguists in the states of the Gulf Cooperation Council for the Arab States of the Gulf ("GCC") by allegedly causing them to be "blacklisted" in GCC countries. *See* Am. Compl. ¶¶ 130-136. But Plaintiffs have failed to allege a key element of such a claim: a competitive relationship between themselves and GLS. *See id.* Plaintiffs' failure in this respect is unsurprising, since—as employees of GLS—Plaintiffs cannot be in competition with GLS. *See id.* ¶¶ 5-29. But without "the existence of a competitive relationship between [] plaintiff[s] and [] defendant," Plaintiffs cannot establish "the factual circumstance giving rise to a common law duty actionable in [the] tort." *17th St. Assocs.*, 373 F. Supp. 2d at 601.

Moreover, Plaintiffs' allegations in support of each of the other elements of this tort are mere "[t]hreadbare recitals of the elements," which do not rise "above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiffs do not, for example, plead facts to support their conclusory allegations that they had a non-speculative, "valid business expectancy in continuing to work" as translators in GCC States and that "it was reasonably certain absent intentional misconduct, [Plaintiffs] would have . . . realized the expectancy." *Shirvinski*, 2010 WL 4279254, at *7. Courts apply an objective test in assessing these elements, requiring the plaintiff to show that the business expectancy was a reasonable "certainty," *id.*, or that there was an objective "*probability* of future economic benefit, not a mere possibility." *Am. Chiropractic*, 367 F.3d at 228. To survive a motion to dismiss, a plaintiff must "plead a *specific* prospective economic advantage or business expectancy . . . with a *specific* party." *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F.

Supp. 2d 700, 705 (E.D. Va. 2004) (emphasis added).  "[A] general expectancy . . . , which is all

that [P]laintiff[s] [have] alleged, does not suffice."  *Id.*; *see also GTSI Corp. v. Wildflower Int'l,*

*Inc.*, 1:09CV123 (JCC), 2009 WL 2160451, at *8-9 (E.D. Va. July 17, 2009).

Plaintiffs assert that a "significant portion of the Arab-speaking population lives in and

around the Persian Gulf" and that Plaintiffs had unspecified "prospective business opportunities

serving as translators in the various Arab-speaking countries."  Am. Compl. ¶¶ 131, 133.

Plaintiffs provide no detail regarding these alleged prospective opportunities such that the Court

could "draw a reasonable inference" that there was an objective probability of future economic

benefit, or a reasonable certainty that Plaintiffs would realize these business expectancies.  *Iqbal*,

556 U.S. at 678-79.  For example, Plaintiffs do not identify any specific available positions or

prospective employers, much less point to any contracts that "guaranteed that [Plaintiffs] would

be able to work for [these employers] in any capacity for any period of time."  *Shirvinski*, 2010

WL 4279254, at *7 (quotation marks and citations omitted).  As a result, the "mere [pleading] of

[Plaintiffs'] belief and hope that a business relationship will continue" or exist in the future "is

inadequate to sustain the cause of action."  *Am. Chiropractic*, 367 F.3d at 228; *see also Gov't*

*Employees Ins.*, 330 F. Supp. 2d at 705-06; *GTSI Corp.*, 2009 WL 2160451, at *8-9.

In addition, Plaintiffs have not plausibly pled that GLS had any contact with the

unspecified sources of their alleged business expectancies.  *See 17th St. Assocs.*, 373 F. Supp. 2d

at 600-01; *Shirvinski*, 2010 WL 4279254, at *6.  Plaintiffs allege that after GLS "ended its

sponsorship relationship with Al Shora," *Al Shora* "informed Kuwait Government authorities

that GLS was not in compliance with Kuwait law."  Am. Compl. ¶¶ 67, 71.  Plaintiffs assert that

"[a]s a consequence" of these reported alleged violations of Kuwaiti law by Al Shora, Plaintiffs

"have been placed on a list of foreign nationals who are not permitted to work in Kuwait," and

"have also been listed as not qualified to enter or work in any of the GCC states." *Id.* ¶¶ 67, 134-135. This, however, is a far cry from alleging that GLS *itself* had contact with the sources of Plaintiffs' claimed business expectancies. Even the inference that GLS knew Al Shora had reported Plaintiffs' alleged violations of Kuwaiti law directly to the Kuwait Government, and indirectly to all GCC States, would not suffice to state a claim. That inference "would not provide an adequate basis for an interference claim against [GLS] because . . . knowledge is not a substitute for contact between," GLS and Kuwait or the other GCC States, much less the unnamed specific businesses that are the alleged sources of Plaintiffs' business expectancies. *Shirvinski*, 2010 WL 4279254, at *6. Allegations of GLS's contact with actual sources of Plaintiffs' business expectancies, along with an alleged competitive relationship between GLS and Plaintiffs, are necessary to "provide prima facie evidence of a motive to interfere and [to] indicate that the interference actually took place." *17th St. Assocs.*, 373 F. Supp. 2d at 601. Absent such allegations, Count V of Plaintiffs' Amended Complaint must be dismissed.

**VI.     Plaintiffs Have Failed to State A Claim for Quantum Meruit Compensation**

        Plaintiffs have failed to state a claim under a theory of quantum meruit for any of the alleged "services" that they provided to GLS. The only actual service that GLS requested from Plaintiffs, and that Plaintiffs provided to GLS, was their work as linguists pursuant to their FSAs.[8] The existence of these FSAs governing Plaintiffs' provision of interpretation and translation services bars Plaintiffs from recovering the value of these services under a theory of

---

[8] Plaintiffs also allege that, "[t]o the extent [they] entered training facilities, prior to and after deployment," they are entitled to quantum meruit compensation for "such required dedication of time." Am. Compl. ¶ 138. But Plaintiffs' claim to compensation under the FLSA for such training time preempts duplicative state law claims. *Jones*, 2012 WL 3257888, at *13-*14 (citing *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007)). Because the gravamen of this claim "is that [Plaintiffs] were not compensated for hours [they] worked while employed with" GLS, and "[s]uch a claim relies on establishing a violation of the FLSA," the claim is preempted by the FLSA. *Id.*; *see also Anderson*, 508 F.3d at 194 (holding that plaintiffs' state law claims were preempted by the FLSA since they "merely duplicated [the] FLSA claims").

quantum meruit.  Plaintiffs also are not entitled to quantum meruit compensation for the separate

alleged "service" of being "detained in Kuwait" and incurring "hardship and detriment . . . as a

consequence of Defendants' change of business plan," Am. Compl. ¶ 139, because Plaintiffs

have not plausibly pled that (1) they conferred a benefit on GLS through this alleged "service,"

or that (2) GLS requested or reasonably should have intended to pay Plaintiffs for such a service.

In order to obtain quantum meruit recovery in Virginia, a plaintiff must show that (1) "he

conferred a benefit on the defendant;" (2) "the defendant knew of the benefit and should

reasonably have expected to repay the plaintiff for it;" and (3) "the defendant accepted or

retained the benefit without paying for its value."  *Lion Assocs., LLC v. Swiftships Shipbuilders,*

*LLC*, 475 F. App'x 496, 503 (4th Cir. 2012) (quoting *Schmidt v. Household Fin. Corp., II*, 661

S.E.2d 834, 838 (Va. 2008)) (quotation marks omitted).  Significantly, a plaintiff cannot recover

under a quantum meruit theory "when an express contract exists that governs payment for the

services rendered."  *Id.* (citing *Mongold v. Woods*, 677 S.E.2d 288, 292 (Va. 2009)).

Here, an express contract governs the only cognizable benefit alleged to have been

provided by Plaintiffs to GLS: their services as linguists.  *See* Am. Compl. ¶¶ 45, 139.  As

Plaintiffs admit, they provided these services pursuant to their FSAs with GLS.  *See* Am. Compl.

¶¶ 5-29, 45.  Moreover, insofar as Plaintiffs encountered hardship while serving as linguists, they

assumed this risk in accepting their position.  Plaintiffs' FSAs warned that it was "possible that

[their] assignment . . . will entail some degree of personal hardship and danger," and in accepting

the assignment, Plaintiffs made "an affirmative indication" that they understood "the difficult

and potentially dangerous conditions that might accompany such an assignment."  FSAs, Ex. 2 at

4 ¶ 10(a), 5 ¶ 10(b); *see also id.* at 5 ¶ 10(c).  As a result, Plaintiffs' work as linguists for GLS

was covered by their FSAs.  Because Plaintiffs and GLS "already negotiated an agreement . . .

20

covering the services for which quantum meruit recovery is claimed," Plaintiffs' claim for quantum meruit recovery for their services as linguists fails.  *Mongold*, 677 S.E.2d at 292.

Additionally, Plaintiffs have not plausibly pled a claim for quantum meruit for the only other "service" they purport to identify: their "time spent being detained in Kuwait and the additional hardship and detriment [they] incurred."  Am. Compl. ¶ 139.  First, Plaintiffs do not plausibly allege any facts to support their conclusory statement that this purported "service" was indeed a service that provided a benefit to GLS.  Plaintiffs allege that GLS received the so-called "benefit of resisting payment" of the "millions of dollars in payments sought by Al Shora."  *Id.* However, it is clear that the actions taken by Al Shora and the Kuwait Government in response to GLS's termination of its Al Shora subcontract in fact *harmed* GLS just as they harmed Plaintiffs, since these actions prevented Plaintiffs from performing their job duties for GLS.  *See id.* ¶ 128.  There is no benefit to GLS here.  Second, and critically, Plaintiffs do not plead any facts to support the assertion that GLS promised to compensate them for the so-called "service" of being detained.  It is not sufficient to allege "a benefit to the defendant, without adducing other facts to raise an implication that the defendant promised to pay the plaintiff for such benefit."  *Schmidt*, 661 S.E.2d at 838.  Here, Plaintiffs have not alleged that GLS promised to "pay" them for the "benefit" of their being "detained" in Kuwait, and, in any event, GLS *did* continue to pay Plaintiffs while they were in Kuwait but incapable of performing work for GLS.

At bottom, the only "benefit" from Plaintiffs that GLS requested, and that Plaintiffs provided, is their services as linguists.  Because Plaintiffs were compensated for these services pursuant to their FSAs, they may not recover for these services under quantum meruit.

## VII.   Plaintiffs Have Failed to State A Claim for Statutory Business Conspiracy

Plaintiffs have failed to state a claim under Virginia's business conspiracy statute, Va. Code. Ann. §§ 18.2-499 *et seq.*, because they have not pled that they suffered an injury to any

business interest.  The statute creates liability for "[a]ny two or more persons who combine,

associate, agree, mutually undertake or concert together for the purpose of (i) willfully and

maliciously injuring another in his reputation, trade, business or profession by any means

whatever."  Va. Code. Ann. §§ 18.2-499 *et seq*.  This statute "applies only to injuries 'to business

and property interests, not to personal or employment interests.'"  *Shirvinski*, 673 F.3d at 321

(quoting *Andrews v. Ring*, 585 S.E.2d 780, 784 (Va. 2003)); *see also Buschi v. Kirven*, 775 F.2d

1240, 1259 (4th Cir. 1985); *Mansfield v. Anesthesia Assocs., Ltd.*, No. 1:07cv941 (JCC), 2008

WL 1924029, at *3 (E.D. Va. Apr. 28, 2008).  Moreover, the purpose of the statute is "to provide

relief against 'conspiracies resulting in *business-related* damages.'"  *Mansfield*, 2008 WL

1924029, at *3 (emphasis added).  A cause of action under this statute thus exists "only when

malicious conduct is directed at one's *business*, not one's *person*."  *Buschi*, 775 F.2d at 1259.

Here, Plaintiffs seek to use the statute improperly to remedy alleged damages to personal,

rather than business, interests.  Plaintiffs assert that Defendants, Defendants' managers, and

Defendants' legal counsel[9] conspired to "willfully injur[e] certain Plaintiffs in their reputation,

trade, business, and profession" by "having certain Plaintiffs execute confessions to criminal

---

[9] Not only do Plaintiffs fail to allege any harm to a business interest, but they also fail to allege that two or more separate entities acted in concert, as required by Virginia's business conspiracy statute.  *See Phoenix Renovation Corp. v. Rodriguez*, 461 F. Supp. 2d 411, 429 (E.D. Va. 2006).  The alleged conspirators here are "Defendants, Defendants' managers, and Defendants' legal counsel."  Am. Compl. ¶ 144.  Although Plaintiffs refer to "Defendants" generally in this Count and make the conclusory allegations that Defendants "act[ed] through GLS," Plaintiffs' assertions elsewhere in the Complaint make clear that the alleged conspirators are GLS, GLS's managers, and GLS's attorneys.  *See id.* ¶¶ 83-87, 107.  However, since a "corporate entity, which acts only through its agents, cannot conspire with itself, so a conspiracy cannot exist if [GLS's managers and legal counsel] were agents of the same principal [GLS] acting within the scope of agency."  *Phoenix Renovation Corp.*, 461 F. Supp. 2d at 429; *see also Mansfield v. Anesthesia Assocs., Ltd.*, No. 1:07-cv-941, 2008 WL 3539807, at *6 (E.D. Va. Aug. 8, 2008) ("If the officers and directors of a corporation act within the scope of their employment, then they are agents of the corporation."); *Michigan Mut. Ins. Co. v. Smoot*, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000) (finding that attorney-defendants acted as agents of an alleged conspirator and therefore could not conspire with their principal).  Nowhere do Plaintiffs allege that GLS's managers and legal counsel were acting outside of the scope of their employment with GLS.  Thus, GLS's managers and legal counsel—as GLS's agents—cannot be held liable for conspiring with their principal.  *See Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 386-87 (Va. 1996) (holding that "a conspiracy was a legal impossibility because a principal and an agent are not separate persons for the purpose of the [business] conspiracy statute.").

activity while in Kuwait." Am. Compl. ¶ 144.  Plaintiffs do not provide any additional factual

allegations regarding their claimed injuries to support this threadbare parroting of the statutory

language.  They do not allege, for example, that they are owners of a company, that they do

business as a separate organization, or that they have separate tax identification numbers as

contractors.  *See Shirvinski*, 672 F.3d at 321.  Accordingly, they fail to plausibly plead that

Defendants' alleged actions were directed at businesses owned by Plaintiffs and resulted in

Plaintiffs' sustaining business damages.  Although not specified in this Count, the only possible

harms alleged by Plaintiffs are sullied professional reputations, a diminished "ability to pursue

[their] profession," or increased "difficulty . . . in obtaining future employment." *Mansfield*,

2008 WL 1924029, at *3; *cf.* Am. Compl. ¶ 136.  But such injuries consist of "damage only to

[Plaintiffs'] *personal* employment prospects," and thus are "of a personal dimension" as opposed

to a professional or business one.  *Shirvinski*, 672 F.3d at 321; *see Mansfield*, 2008 WL 1924029,

at *3.  Accordingly, Plaintiffs have failed to state a claim for statutory business conspiracy.[10]

## VIII.   Plaintiffs Have Failed to State a Claim for Negligence and Gross Negligence

Plaintiffs' claim for negligence must be dismissed because Plaintiffs have failed to

identify any duty that was breached by GLS, and, in any event, have failed to allege facts

sufficient to plausibly suggest that their claimed injuries were proximately caused by GLS.

"In Virginia, a claim for negligence must include allegations that: (1) a legal duty was

owed by the Defendant; (2) that duty was breached by the Defendant; and (3) a harm or injury

was proximately caused by the breach." *Tohotcheu v. Harris Teeter, Inc.*, 1:11-CV-767, 2011

---

[10] In this Count, Plaintiffs request a number of legal and equitable remedies, all of which the Court should deny
because Plaintiffs have failed to state a claim.  Additionally, one of Plaintiff's requested remedies is that the Court
order that GLS "obtain and/or pay for independent Kuwaiti legal counsel to provide independent legal advice to
affected Plaintiffs and to advocate in the best interest of affected Plaintiffs without a conflict of interest between
GLS and the affected Plaintiff." Am. Compl. ¶ 149.  GLS notes that Plaintiffs have not identified any duty,
contractual or otherwise, which would give rise to such an obligation.  And in fact, as suggested by Plaintiffs'
own allegations, GLS did provide Plaintiffs with access to Kuwaiti legal counsel.  *See* Am. Compl. ¶¶ 83, 85.

WL 5873074, at *4 (E.D. Va. Nov. 22, 2011).  Here, Plaintiffs allege that Defendants had a general duty of care "to demonstrate knowledge of Kuwait laws and customs and sensitivity to cultural norms in Kuwait"; and "to provide a safe workplace for their employees and to avoid unreasonably subjecting them to foreseeable harm."  Am. Compl. ¶¶ 151-52.  But Plaintiffs do *not* allege that Defendants *breached* any of these purported "duties."  Rather, Plaintiffs only allege that Defendants "breached their duty of care owed to Plaintiffs *insofar* as their conduct was negligent, wanton and reckless and in disregard of Kuwait law, custom and against Kuwaiti cultural norms." *Id*. ¶ 158 (emphasis added).  Because Plaintiffs have done no more than recite a legal conclusion—and have not alleged that GLS actually breached any legal duty—Plaintiffs' negligence claim must be dismissed.  *See Tohotcheu*, 2011 WL 5873074, at *4.

At best, Plaintiffs' negligence claim is based solely on the allegation that Defendants *may* have breached an amorphous "duty of care" in terminating their subcontract with Al Shora.  However, GLS's agreement with Al Shora provides that GLS "may terminate performance of work under this [subcontract] in whole or . . . in part, if" GLS "determines that a termination is in [GLS's] interest."  *See* GLS-Al Shora Subcontract, Ex. 2 at 46-47, I.I1.  Even assuming GLS's lawful termination of its subcontract with Al Shora constituted a breach of a duty of care—which it did not—Plaintiffs have failed to plausibly allege that this breach was the proximate cause of any injuries they sustained, given the intervening actions of Al Shora and the Kuwait Government.  Plaintiffs assert that their "being imprisoned, being confined to a U.S. military base in Kuwait . . . [and] being publicly accused of criminal activity" was the "direct and foreseeable consequence" of Defendants' conduct.  Am. Compl. ¶¶ 159-60.  But without "further factual enhancement," Plaintiffs' claim that GLS proximately caused these injuries by lawfully terminating its subcontract "stops short of the line between possibility and plausibility."

*Twombly*, 550 U.S. at 557.  For all these reasons, Plaintiffs' negligence claim must be dismissed.

Plaintiffs' claim for gross negligence likewise must be dismissed for these same reasons, and also because Plaintiffs have failed to plausibly allege that GLS's actions were "wanton or reckless."  Under Virginia law, "[g]ross negligence is behavior that shows 'indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of [that] person'; it is 'a degree of negligence [that] would shock fair[-]minded men.'"  *Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 217 (E.D. Va. 2008) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E. 2d 916, 918 (Va. 2004)).  Plaintiffs' lone allegation supporting their gross negligence claim is that Defendants' conduct was "wanton and reckless."  Am. Compl. ¶ 161.  However, this assertion is, once again, no more than a legal conclusion, which the Court must disregard.  *See Sykes*, 548 F. Supp. 2d at 217 (holding that plaintiff's allegations that the defendant acted "willfully, wantonly, [and] recklessly" were conclusory, and that the court was "not required to regard them as true").  "For the issue of gross negligence to become an 'issue for discovery' or a 'jury question,' Plaintiffs first must satisfy the requirements of Rule 12(b)(6)."  *Certain Inst. Companies v. J & J Truckin LLC*, 2:12CV31, 2012 WL 3265098, at *5 (E.D. Va. Aug. 9, 2012).  "Scant allegations" that a defendant "was allegedly grossly negligent without providing any factual support for the allegation" do not suffice.  *See id.* at *4-*5.  Because Plaintiffs have failed to provide any factual support for their "scant allegations" that GLS acted "wantonly and recklessly," Plaintiffs' gross negligence claim must be dismissed.

## IX.    Plaintiffs Have Failed to State a Claim for False Imprisonment

Plaintiffs have failed to state a claim for false imprisonment because they have not alleged that they were directly restrained by GLS.   In order to bring a false imprisonment claim under Virginia law, a plaintiff must plead "the direct restraint by one person of the physical liberty of another without adequate legal justification."  *Harbeck v. Smith*, 814 F. Supp. 2d 608,

621 (E.D. Va. 2011) (internal quotation marks omitted).  Here, Plaintiffs contend that due to Defendants' "negligence, recklessness and/or intentional failure to obtain and maintain a Kuwaiti sponsor" for Plaintiffs, certain Plaintiffs "were imprisoned in Kuwait by the Kuwaiti authorities." Am Compl. ¶ 165.  But Plaintiffs cannot bring a false imprisonment claim against GLS based on the Kuwait Government's imprisonment of certain Plaintiffs.  Although "someone certainly directly restrained Plaintiff[s] by keeping [them] locked in a jail cell, the [] Amended Complaint shows that the person was not" GLS.  *Harbeck*, 814 F. Supp. 2d at 621.  GLS cannot be held liable for the direct restraint imposed by the Kuwaiti Government because Plaintiffs do not—and cannot—allege that GLS "directly participated in the arrest of the plaintiff[s]."  *See id.* (refusing to hold defendant liable for false imprisonment in the absence of allegations that the defendant had actively participated in the plaintiff's arrest).  Absent such "direct participation" in Plaintiffs' arrests, GLS's alleged actions or omissions that led to the *Kuwaiti Government's* imprisonment of Plaintiffs is insufficient to show that GLS "directly restrained" Plaintiffs.  *See id.*

Likewise, Plaintiffs cannot bring a false imprisonment claim against GLS based on GLS's alleged representation that Plaintiffs "would be arrested by Kuwaiti authorities if they left the U.S. military base."  Am. Compl. ¶ 166.  Plaintiffs have not alleged that GLS directly restrained them from leaving the U.S. military base such as, for example, threatening to forcibly restrain them if they attempted to leave.  To the contrary, Plaintiffs allege only that GLS warned them that *if they chose* to leave the U.S. military base, there was a risk that an independent, sovereign third party—namely, the Kuwait Government—might arrest and imprison them.  *See id*.  Such a warning is a far cry from a threat of unlawful restraint, as would be necessary to give rise to a false imprisonment claim under Virginia law.  *See Whitlock v. Street*, Civ. A. No. 3:12-CV-95-HEH, 2012 WL 3686434, at *5 (E.D. Va. Aug. 24, 2012) (dismissing false imprisonment

26

claim where there was no "allegation of any threat of unlawful restraint on [defendant's] part").

**X.      Plaintiffs Have Failed to State a Claim for Negligent Infliction of Emotional Distress**

Plaintiffs have failed to state a claim for negligent infliction of emotion distress because they have failed to plausibly allege that Defendants acted negligently or that they sustained a physical injury due to Defendants' alleged negligence.  In order to state a claim for negligent infliction of emotion distress, a plaintiff must allege "actual physical injury as 'the natural result of fright or shock proximately caused by the defendant's negligence,' rather than mere symptoms of an underlying emotional disturbance.'"  *King v. City of Chesapeake*, 478 F. Supp. 2d 871, 874 (E.D. Va. 2007) (quoting *Hughes v. Moore*, 197 S.E. 2d 214, 219 (Va. 1973)) (internal citations omitted).  Moreover, "[t]here must be 'a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the physical injury.'"  *Elrod v. Busch Entertainment Corp.*, Nos. 4:09cv164, 4:09cv165, 4:09cv166, 2010 WL 5620918, at *2 (E.D. Va. Dec. 14, 2010) (quoting *Hughes*, 197 S.E. 2d at 219).

Here, Plaintiffs assert that Defendants' "negligent, reckless and wanton conduct" caused certain Plaintiffs to suffer emotional distress, and that these Plaintiffs have "suffered physical injury as a consequence of the emotional distress including high blood pressure, skin rashes, insomnia, nausea, and vomiting."  Am. Compl. ¶¶ 169-71.  However, for the reasons discussed above, Plaintiffs have not plausibly alleged that GLS acted negligently.  *See supra* at 23-25; *see also Robertson v. Prince William Hosp.*, No. 1:11–cv–820, 2012 WL 1448101, at *6 (E.D. Va. April 25, 2012) (dismissing claim for negligent infliction of emotion distress where plaintiff failed to plausibly allege that defendant was negligent).  In addition, Plaintiffs have not plausibly alleged an actual physical injury resulting from their claimed emotional distress that is separate and distinct from the alleged physical *symptoms* of that emotional distress.  *See, e.g.*, *King*, 478 F. Supp. 2d at 874 (dismissing negligent infliction of emotional distress claim where the alleged

physical injuries were merely symptoms of the distress, such as "severe stomach upset [sic]" and

"rash and pain on her face and acute insomnia"); *Myseros v. Sissler*, 387 S.E. 2d 463, 465-66

(Va. 1990) (concluding that "nausea, difficulty in sleeping and breathing," and "hypertension"

were symptoms of emotional disturbance rather than manifestations of actual physical injury).

Accordingly, Plaintiffs' negligent infliction of emotional distress claim must be dismissed.

## XI.   Plaintiffs Have Failed to State a Claim for Intentional Infliction of Emotional Distress

Plaintiffs also have failed to state a claim for intentional infliction of emotional distress

("IIED").  "[A]ctions for intentional infliction of emotional distress are not favored in Virginia."

*Michael v. Sentara Health Sys.*, 939 F. Supp. 1220, 1233 (E.D. Va. 1996); *see also Ortiz v.*

*Panera Bread Co.*, No. 1:10CV1424, 2011 WL 335343, at *6 (E.D. Va. Aug. 2, 2011).  To state

an IIED claim under Virginia law, a plaintiff must plausibly allege that: (1) "the wrongdoer's

conduct was intentional or reckless;" (2) the alleged "conduct was outrageous or intolerable;" (3)

"there was a causal connection between the wrongdoer's conduct and the resulting emotional

distress;" and (4) "the resulting emotional distress was severe."  *Ainsworth v. Loudon County*

*Sch. Bd.*, 851 F. Supp. 2d 963, 981 (E.D. Va. 2012).

Here, Plaintiffs have not alleged facts sufficient to show that GLS engaged in reckless

conduct, much less outrageous or intolerable conduct.  Plaintiffs assert that GLS engaged in

"intentional conduct in failing to obtain and maintain Kuwaiti sponsors for them," which, they

allege, GLS "knew or shown have known" was likely to place Plaintiffs in "jeopardy of

immediate arrest and detention by the Kuwaiti authorities."  Am. Compl. ¶¶ 173-74.  However,

GLS was within its rights in terminating its subcontract with Al Shora, and Plaintiffs have not

plausibly alleged that GLS took any negligent or reckless actions in connection with this lawful

termination.  Moreover, even if Plaintiffs could plausibly allege such conduct—which they

cannot—such allegations would be insufficient to show that GLS's conduct was "outrageous or intolerable." This element of an IIED claim "cannot be satisfied by alleging that the defendant's behavior was tortious, or even criminal"; indeed, "malice or intentional behavior which would justify punitive damages for other torts will not suffice." *Ortiz*, 2011 WL 335343, at *6; *see also Harris v. Kreutzer*, 624 S.E. 2d 24, 33 (Va. 2006). Instead, liability for IIED exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ainsworth*, 851 F. Supp. 2d at 981. "This high standard is exceptionally difficult to prove in the employment context," *Ortiz*, 2011 WL 335343, at *6, and has not been met here.

In addition, Plaintiffs have not alleged that they suffered sufficiently severe emotional distress to sustain an IIED claim. Plaintiffs claim that they suffered "severe emotional distress," and "physical injury as a consequence . . . including high blood pressure, skin rashes, insomnia, nausea, and vomiting." *Id.* ¶¶ 175, 178. However, liability for IIED "arises only when the emotional distress is extreme, and only where the distress inflicted is so severe that no reasonable person could be expected to endure it." *Ainsworth*, 851 F. Supp. 2d at 982. This requirement is "difficult to satisfy." *Michael*, 939 F. Supp. at 1233. Plaintiffs' conclusory allegations regarding their "severe emotional distress" are insufficient to plausibly plead emotional distress of the requisite severity. *See Harris v. Kreutzer*, 624 S.E. 2d 24, 34 (Va. 2006) (dismissing IIED claim for failure to plead facts "sufficient to support severity element" even though plaintiff alleged she suffered "nightmares, difficulty sleeping, extreme loss of self-esteem and depression, requiring additional psychological treatment and counseling"); *Russo v. White*, 400 S.E. 2d 160, 163 (Va. 1991) (dismissing IIED claim even though plaintiff "alleged that she was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable

29

to concentrate at work" because she failed to allege "that she had any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income").  For these reasons, Plaintiffs' IIED claim must be dismissed.

## XII. Plaintiffs Have Failed to State a Claim for Injunctive Relief

Finally, Plaintiffs' claim for injunctive relief fails because Plaintiffs have not stated any violations of law upon which such relief could be based.  In Count XII, Plaintiffs request wide-ranging injunctive relief to remedy alleged injuries stemming from their risk of arrest by Kuwaiti authorities and their alleged confinement to U.S. military bases in Kuwait.  *See* Am. Compl. ¶¶ 181-186.  "To the extent that Plaintiffs attempt to raise injunctive relief as a cause of action, such cause of action should be dismissed," since injunctive relief is a remedy, "not a separate cause of action."  *Mamo v. BP P.L.C.*, 1:05CV1323 (JCC), 2006 WL 269056, at *3 (E.D. Va. Jan. 30, 2006).  Insofar as Plaintiffs base their claim for injunctive relief on any of the causes of action asserted in the Amended Complaint, their request for injunctive relief also fails, since the Amended Complaint does not state any claim upon which relief may be granted.[11]

## CONCLUSION

For the foregoing reasons, GLS respectfully requests that the Court dismiss all counts of Plaintiffs' Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).[12]

Dated: November 29, 2013                           Respectfully submitted,


                                        _____/s/_____
                                        Jason C. Schwartz, Va. Bar No. 43635
                                        Andrea R. Lucas, Va. Bar No. 82357

---

[11] Plaintiffs' request for punitive damages similarly fails since Plaintiffs have not sufficiently set forth any claim upon which such an award could be based.

[12] Because Plaintiffs have failed to assert a valid claim against GLS, Plaintiffs also have failed to set forth any basis upon which a class could be certified.  To the extent that GLS's Motion to Dismiss is denied in whole or in part, GLS reserves all rights to articulate additional reasons why certification of a class action is not appropriate.

Molly T. Senger, Admitted *pro hac vice*
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC  11101
jschwartz@gibsondunn.com
alucas@gibsondunn.com
msenger@gibsondunn.com
Telephone:   202.955.8500
Facsimile:    202.467.0539

*Attorneys for Defendant Global Linguist
Solutions LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of November, 2013, I electronically filed the

foregoing with the Clerk of the Court for the Eastern District of Virginia using the CM/ECF

system, which sent a notification of such filing (NEF) to the following:

John J. Beins
Seth D. Goldberg
BEINS, GOLDBERG & HENNESSEY, LLP
2 Wisconsin Circle, Suite 700
Chevy Chase, MD 20815
jbeins@bghllp.com
sethg@bghllp.com

Kathleen A. Waldy
WHITEFORD TAYLOR & PRESTON LLP
3190 Fairview Park Dr.
Falls Church, VA 22042
kwaldy@wtplaw.com

Attison L. Barnes, III
WILEY REIN LLP (DC)
1776 K St., N.W.
Washington, DC 20006
abarnes@wileyrein.com

_____/s/_____
Jason C. Schwartz, Va. Bar No. 43635
Andrea R. Lucas, Va. Bar No. 82357
Molly T. Senger, Admitted *pro hac vice*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036
jschwartz@gibsondunn.com
alucas@gibsondunn.com
msenger@gibsondunn.com
Telephone:      202.955.8500
Facsimile:      202.467.0539

32