**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| RAMZI ZINNEKAH, *et al.*, | ) |
| | ) |
|        Plaintiffs, | ) |
| | ) |
|        v. | )   Case No.: 1:13-cv-01185 AJT/JFA |
| | ) |
| GLOBAL LINGUIST SOLUTIONS, *et al.*, | ) |
| | ) |
|        Defendants. | ) |
| | ) |

---

### DynCorp International LLC's Memorandum Of Law In Support Of Its Motion To Dismiss First Amended Complaint And Motion To Strike

Kathleen Waldy (Va. Bar No.: 75539)
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
(703) 280-9268 (voice)
(703) 280-9139 (facsimile)
kwaldy@wtplaw.com

Dwight W. Stone, II (*pro hac vice*)
Dennis M. Robinson, Jr. (*pro hac vice*)
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202
410-347-8700 (voice)
410-752-7092 (facsimile)
dstone@wtplaw.com
drobinson@wtplaw.com

*Attorneys for Defendant*
*  DynCorp International LLC*

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES.................................................................................... ii

INTRODUCTION ............................................................................................. 1

FACTUAL BACKGROUND RELEVANT TO DYNCORP'S MOTION................................. 2

STANDARD OF REVIEW .................................................................................. 5

ARGUMENT .................................................................................................. 5

I.      GLS IS A DELAWARE LIMITED LIABILITY COMPANY, NOT AN
"UNINCORPORATED JOINT VENTURE," AND DYNCORP IS NOT LIABLE FOR
ACTIONS OF GLS ............................................................................ 5

II.     PLAINTIFFS HAVE NOT ADEQUATELY PLED AN ALTER-EGO RELATIONSHIP
BETWEEN GLS AND DYNCORP............................................................. 8

III.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FLSA AGAINST
DYNCORP ................................................................................... 11

IV.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE KUWAITI LABOR LAW
AGAINST DYNCORP....................................................................... 14

V.     PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT AGAINST
DYNCORP ................................................................................... 14

VI.    PLAINTIFFS FAIL TO STATE CLAIMS AGAINST DYNCORP FOR TORTIOUS
INTERFERENCE WITH AN EXISTING CONTRACT AND TORTIOUS INTERFERENCE
WITH PROSPECTIVE ECONOMIC ADVANTAGE.......................................... 15

VII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR *QUANTUM MERUIT* COMPENSATION
AGAINST DYNCORP........................................................................ 16

VIII.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST DYNCORP FOR STATUTORY
BUSINESS CONSPIRACY.................................................................... 17

IX.    PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE AND GROSS
NEGLIGENCE AGAINST DYNCORP ....................................................... 18

X.     PLAINTIFFS FAIL TO STATE A CLAIM FOR FALSE IMPRISONMENT AGAINST
DYNCORP ................................................................................... 18

PAGE

XI.    PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF
EMOTIONAL DISTRESS AGAINST DYNCORP ........................................................ 19

XII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS AGAINST DYNCORP ........................................................ 19

XIII.  PLAINTIFFS FAIL TO STATE A CLAIM FOR INJUNCTIVE RELIEF AGAINST
DYNCORP .................................................................................................. 19

CONCLUSION................................................................................................... 20

## TABLE OF AUTHORITIES

CASES                                                                      PAGE

*17th St. Associates, LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584 (E.D. Va.
2005) ...................................................................................................... 16

*Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212 (4th Cir. 2004) ...................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................... 2, 5, 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................... 2, 5, 6, 8,
14

*Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462 (D. Del. 2010) ............................. 8

*Brainware v. Scan Optics*, 2012 U.S. Dist. LEXIS 77337 (E.D. Va. May 31, 2012). 7

*Bryant v. Wells Fargo Bank, Nat'l Ass'n*, 861 F. Supp. 2d 646 (E.D.N.C. 2012) ....... 12

*C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 359 F. Supp. 2d 497 (E.D. Va. 2005) ...... 7

*C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126 (4th Cir. 2002) ................... 9

*Classen Immunotherapies, Inc. v. Biogen IDEC*, 381 F. Supp. 2d 452 (D. Md.
2005) ...................................................................................................... 12

*Davis v. Bowens*, No. 1:11-cv-691, 2012 U.S. Dist. LEXIS 101402 (M.D.N.C. July
23, 2012) ................................................................................................. 12

*Erickson v. Pardus*, 551 U.S. 89 (2007) ...................................................... 5

| CASES | PAGE |
|---|---|
| *Fox v. City of Greensboro*, 807 F. Supp. 2d 476 (M.D.N.C. 2011)............................ | 12 |
| *Gowin v. Granite Depot, LLC,* 634 S.E.2d 714 (Va. 2006)......................................... | 6 |
| *Hanks v. Wavy Broadcasting, LLC, et al.*, No. 2:11-cv-439 RGD, 2012 U.S. Dist. LEXIS 15729 (E.D. Va. Feb. 8, 2012)................................................................... | 3 |
| *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070 (C.D. Cal. 2011)........................................ | 13 |
| *Income Tax Sch., Inc. v. Lopez,* No. 3:12-cv-334, 2012 U.S. Dist. LEXIS 110779 (E.D. Va. Aug. 7, 2012)........................................................................................ | 10 |
| *Jones v. Imaginary Images, Inc.*, Action No. 3:12-CV-217, 2012 WL 3257888 (E.D. Va. Aug. 8, 2012).......................................................................................... | 6, 14 |
| *Lewis-Gale Medical Center, LLC v. Alldredge*, 710 S.E. 2d 716 (Va. 2011) ............. | 15 |
| *Lion Assocs., LLC v. Swiftships Shipbuilders, LLC*, 475 F. Appx. 496 (4th Cir. 2012) ...................................................................................................................... | 16 |
| *Mamo v. BP P.L.C.*, 1:05-cv-1323 JCC, 2006 U.S. Dist. LEXIS 7169 (E.D. Va. Jan. 30, 2006) .................................................................................................................... | 19 |
| *McFarland v. Virginia Retirement Services of Chesterfield, LLC,* 477 F.Supp.2d 727 (E.D. Va. 2007)............................................................................................... | 8 |
| *Melegrito v. CitiMortgage Inc.*, No. 11-01765 LB, 2011 U.S. Dist. LEXIS 60447 (N.D. Cal. June 6, 2011) (unpublished) ...................................................................... | 13 |
| *Mongold v. Woods*, 677 S.E. 2d 288 (Va. 2009) ...................................................... | 16 |
| *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250 (4th Cir. 2009) ...................................................................................................................... | 5 |
| *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423 (4th Cir. 2011) ...................................................................................................................... | 9 |
| *Oliver v. Omega Protein, Inc.*, No. 3:10-cv-47 REP/DWD, 2011 U.S. Dist. LEXIS 27621 (E.D. Va. Jan. 31, 2011)............................................................................... | 9 |

| CASES | PAGE |
|---|---|
| *Owens-Corning Fiberglas Corp. v. Watson*, 413 S.E. 2d. 630 (Va. 1992) | 19 |
| *Perpetual Real Estate Services, Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545 (4th Cir. 1992) | 9 |
| *Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176 (4th Cir. 2009) | 3 |
| *Pyrotek, Inc. v. Motionmaster, Inc.*, No. 1:04-cv-00549, 2006 U.S. Dist. LEXIS 57007 (M.D.N.C. Feb. 22, 2006) | 10 |
| *Richmond v. Indalex Inc.*, 308 F. Supp. 2d 648 (M.D.N.C. 2004) | 10 |
| *Scheuer v. Rhodes*, 416 U.S. 232 (1974) | 5 |
| *Schmidt v. Household Fin. Corp., II*, 661 S.E. 2d 834 (Va. 2008) | 16 |
| *Schultz v. Capital Intern. Sec. Inc.*, 466 F.3d 298 (4th Cir. 2006) | 11 |
| *Sears, Roebuck & Co. v. Sears*, 744 F. Supp. 1297 (D. Del. 1990) | 8 |
| *SEC v. Woolf*, 835 F. Supp. 2d 111 (E.D. Va. 2011) | 10 |
| *Shirvinski v. U.S. Coast Guard*, No. 1:09-CV-896 AJT TRJ, 2010 U.S. Dist. LEXIS 113629 (E.D. Va. Oct. 25, 2010) | 16 |
| *Simbeck, Inc. v. Dodd Sisk Whitlock Corp.*, 508 S.E. 2d 601 (Va. 1999) | 19 |
| *Skinner v. Switzer*, 131 S. Ct. 1289 (2011) | 5 |
| *Spagnola v. Chubb Corp.*, 264 F.R.D. 76 (S.D.N.Y. 2010) | 9 |
| *Strikeforce Techs. Inc. v. Phonefactor, Inc.*, 2013 U.S. Dist. LEXIS 162113 (D. Del. November 14, 2013) | 10 |
| *Sykes v. Baker Pharm. Corp.*, 548 F. Supp. 2d 208 (E.D. Va. 2008) | 19 |
| *Tate v. Atlanta Oak Flooring Co.*, 18 S.E. 2d 903 (Va. 1942) | 6 |
| *Thompson v. Quorum  Health Res., LLC,* , No. 1:06-cv-168, 2007 U.S. Dist. LEXIS 72376 (W.D. Ky. Sept. 27, 2007) | 10 |
| *Vichi v. Koninklijke Philips Elecs. N.V.*, No. 2578 VCP, 2009 Del. Ch. LEXIS 209 (Del. Ch. Dec. 1, 2009) | 7 |

**CASES**                                                                                      **PAGE**

*Washington v. Thomas*, No. 07-11302, 2009 U.S. Dist. LEXIS 128567 (E.D. Mich.
April 22, 2009)..................................................................................................   12

*Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540 (D. Colo. 1990) ........................   13

*Wellman v. Dow Chem. Co.*, No. 05-280 SLR, 2007 U.S. Dist. LEXIS 19527
(D. Del. Mar. 20, 2007).....................................................................................   7

*Whitaker v. Sheild*, NO. 4:05-cv-130, 2006 U.S. Dist. LEXIS 101055 (E.D. Va.
May 3, 2006)......................................................................................................   18

*Williams v. White (In re White)*, 412 B.R. 860 (Bankr. W.D. Va. 2009) ...................   8

*Wolman v. Catholic Health Sys. of Long Island, Inc.*, 853 F. Supp. 2d 290
(E.D.N.Y. 2012)..................................................................................................   11


**RULES AND STATUTES**                                                                         **PAGE**

29 U.S.C. §§ 206(a)(1).......................................................................................   11

29. U.S.C. § 207(a)(1)........................................................................................   11

Del. Code Ann. tit. 6, § 18–303 .........................................................................   7

Fed. R. Civ. P. 8 ................................................................................................   12, 18

Fed. R. Civ. P. 8(a) ............................................................................................   13

Fed. R. Civ. P. 9(b) ...........................................................................................   9

Fed. R. Civ. P. 12(b)(6)......................................................................................   1, 10

Fed. R. Civ. P. 12(f)...........................................................................................   1

Fed. R. Evid. 201 ..............................................................................................   3

Va. Code Ann. § 13.1-1019 ...............................................................................   8

Va. Code Ann. § 13.1-1051 ...............................................................................   7

Defendant, DynCorp International LLC ("DynCorp"), pursuant to Rule 12(b)(6) and Rule 12(f) of the Federal Rules of Civil Procedure, respectfully submits its Memorandum of Law in Support of Its Motion to Dismiss Plaintiffs' First Amended Complaint ("Amended Complaint") and Motion to Strike.

## INTRODUCTION

Defendant Global Linguist Solutions LLC ("GLS") has filed a Motion to Dismiss and Motion to Strike and supporting memoranda of law in which GLS demonstrates why the Court should dismiss Plaintiffs' Amended Complaint, in its entirety, for failure to state a claim, and should strike the Plaintiffs' jury demand and demand for punitive damages.  DynCorp adopts and incorporates all of GLS's arguments as if set forth herein.[1]

For the sake of brevity, this memorandum will focus on the additional reasons why this Court should dismiss, with prejudice, all claims asserted against DynCorp.  As a matter of law, and based on a fair reading of the Amended Complaint, DynCorp does not belong in this case.  It appears that DynCorp originally was sued based on Plaintiffs' mistaken belief that GLS is an unincorporated joint venture and that DynCorp, as one of two joint venturers, is liable to Plaintiffs as a matter of law to the same extent that GLS could be.  In moving to dismiss the original Complaint, DynCorp demonstrated that the Court can take judicial notice that GLS is a Delaware limited liability company.  As such, under both Virginia law and Delaware law, DynCorp is not liable for the actions of GLS, absent exceptional circumstances that Plaintiffs have not pled and that do not exist.

---

[1] References herein to "GLS Memorandum" are to "Defendant Global Linguist Solutions LLC's Memorandum of Law in Support of its Motion to Dismiss the Amended Complaint" (Doc. #50). To the extent applicable, DynCorp also adopts and incorporates Defendant AECOM NSP's Memorandum in Support of its Motion to Dismiss First Amended Complaint and Strike.

In their Amended Complaint (filed the same day that their responses to Defendants' motions to dismiss were due), Plaintiffs transparently attempt to plead around the inconvenient fact that GLS is a Delaware LLC. They attempt to do so by alleging, fancifully and implausibly, the existence of a *separate* "Global Linguist Solutions" entity which also is engaged in providing linguists and translation services to the U.S. Government. Plaintiffs allege that this supposed entity is not a limited liability company but rather is an "unincorporated venture between DynCorp and AECOM," Am. Compl. ¶ 3, and then throughout the remainder of the pleading refer to "GLS" as standing for this supposed unincorporated entity *or, alternatively*, Global Linguist Solutions LLC—an entity that Plaintiffs admit is a "Delaware registered limited liability company" and have named as a separate Defendant. *See, e.g.*, Am. Compl. ¶¶ 4, 43. The Court should reject this creative pleading tactic pursuant to the teachings of *Twombly* and *Iqbal* because Plaintiffs allege no facts sufficient to make plausible their theory of two GLS entities operating the same business.[2]

DynCorp is not Plaintiffs' employer and has no contractual relationship with Plaintiffs. DynCorp is not the alter ego of GLS, and Plaintiffs' allegations fall far short of the stringent pleading requirements for asserting alter ego liability. Plaintiffs' use of the term "Defendants" to lump the Defendants together throughout the Amended Complaint does not solve any of these fatal problems, because this manner of pleading is legally defective. Applying the standard of review required by *Twombly*, *Iqbal* and their progeny to the Amended Complaint's allegations against DynCorp, it is clear that Plaintiffs have failed to state a claim against DynCorp and that further repleading would be futile.

---

[2] Except where necessary to address Plaintiffs' "two GLS's" theory, "GLS" is used herein to refer to the actual entity: Global Linguist Solutions LLC. Undersigned counsel are aware of no "unincorporated joint venture" entity known as "Global Linguist Solutions."

2

## FACTUAL BACKGROUND RELEVANT TO DYNCORP'S MOTION

In this putative class action lawsuit, Plaintiffs seek to assert certain purported statutory and common law claims that center on allegations concerning Plaintiffs' contractual relationship with their U.S. employer, Global Linguist Solutions LLC ("GLS"). DynCorp adopts and incorporates the "Factual Background" section of the GLS Memorandum, which summarizes Plaintiffs' allegations and the key aspects of the contracts upon which Plaintiffs' claims rely. DynCorp provides the following additional factual background that is directly relevant to its instant motion.

In contrast to the original Complaint, Plaintiffs admit in the Amended Complaint that "Global Linguist Solutions, LLC [*sic*] ('GLS, LLC') is a Delaware limited liability company whose members are AECOM and DynCorp. On information and belief, GLS, LLC contracts with the United States Government to provide linguists and translation services." Am. Compl. ¶ 40. The Court can take judicial notice of the fact that GLS is a Delaware limited liability company (LLC). *See* Certificate of Good Standing and Certificate of Formation, attached collectively as Exhibit 1.[3]

Plaintiffs allege in conclusory fashion that "DynCorp exercises such significant dominion and control over GLS such that, to the extent GLS, LLC purports to operate as a separate entity, it in reality operates as an alter ego to DynCorp and DynCorp attempts to use the corporate shell

---

[3] In reviewing this Rule 12(b)(6) motion, the Court may take judicial notice of public records such as those maintained by the Delaware Department of State. *See, e.g., Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (for purposes of a Rule 12(b)(6) analysis, court "may take judicial notice of matters of public record"); *Hanks v. Wavy Broadcasting, LLC, et al.*, No. 2:11-cv-439 RGD, 2012 U.S. Dist. LEXIS 15729, at *9-11 (E.D. Va. Feb. 8, 2012) (applying Fed. R. Evid. 201 and taking judicial notice of corporate records obtained from the Virginia State Corporation Commission website). Here, the fact that GLS is a Delaware limited liability company could have been determined simply by performing a "General Information Name Search" using the name "Global Linguist Solutions" on the Delaware Department of State website: https://delecorp.delaware.gov/tin/GINameSearch.jsp.

to unfairly limit its liability for the harms inflicted by GLS, LLC." Am. Compl., ¶ 41.  Plaintiffs

allege no facts supporting the assertion that the "corporate shell" is used by DynCorp to "unfairly

limit its liability for the harms inflicted by GLS, LLC."

Paragraph 42 of the Amended Complaint contains all the factual allegations upon which

the purported "alter ego" theory is based:

> 42.    DynCorp exercises all significant decision-making over GLS' activities;
> provides all the GLS paychecks to Plaintiffs; controls all of GLS back office
> operations including personnel and cost reimbursement (through the
> https://myjourney.dyn-intl.com/psp/myjourney/?cmd=login website); hires and
> fires personnel; controls email communications to and from GLS; sets all of the
> training policies for GLS personnel including the required on-line training
> required by DynCorp through its "DynLearn" webpage; tracks Plaintiffs' time
> (through such devices as the remote website login at https://tls.dyn-intl.com); and
> established the sponsorship relationship between GLS and Alshora [sic].  By way
> of example, Samuel Sidmed [sic] identified himself to Plaintiffs as the Middle
> East Operations Manager for GLS; however, Mr. Sidamed's email address is
> "Samuel.sidamed@dyn-intl.com["] and all of the web-based information he
> required from Plaintiffs are owned and controlled by DynCorp (e.g. DYN My
> Journey https://myjourney.dyn-intl.com; TLS Timesheet https://tls.dyn-intl.com;
> DELTEK:https://dte.dyn-intl.com/DeltekTC/welcome.msv). As disclosed to the
> public by DynCorp International on September 20, 2011, "Global Linguist
> Solutions (GLS) is a joint venture between DynCorp International and AECOM
> NSP (National Security Programs), formerly McNeil Technologies.  Together,
> with DI and AECOM, GLS brings extensive experience in the deployment and
> sustainment of large-scale linguist operations and the management of linguist
> contracts in support of the U.S. government."

Am. Compl., ¶ 42.

Other than the above-quoted allegations, the Amended Complaint includes few

allegations that are specific to DynCorp; rather, most of the factual allegations refer to GLS

individually or "Defendants" collectively.

All 25 Plaintiffs allege that their employment contracts are with GLS.[4]  See Am. Compl.

¶¶ 5-29.  They do not allege that they entered into a contract with DynCorp.  Nevertheless,

---

[4] The contracts at issue are the "Foreign Service Agreements"(FSAs) discussed in and attached
to the GLS Memorandum, and they contain no reference to DynCorp.; rather, the FSAs list

Plaintiffs allege that "during the mandatory training periods, Plaintiffs and absent class contractors are confined within a DynCorp training facility and are not free event [*sic*] to come and go at their own will." Am. Compl. ¶ 59.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim upon which relief can be granted tests not whether a plaintiff will prevail on the merits, but whether he or she has properly stated a claim. *See Skinner v. Switzer,* 131 S. Ct. 1289, 1296 (2011) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974)). While the court must accept as true all well-pled factual allegations, *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Factual allegations "must be enough to raise a right to relief above the speculative level" with the complaint having "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.

---

Global Linguist Solutions as the Employer. *See* Ex. 1 to GLS Memorandum. As noted by GLS, it is appropriate for the Court to consider the FSAs at the motion to dismiss stage. Plaintiffs specifically refer to and rely on their individual employment contracts with GLS in the Amended Complaint and these contracts are central to their breach of contract claims. *See* Am. Compl. ¶¶ 5-29; *Am. Chiropractic v. Trigon Healthcare*, 367 F.3d 212, 234 (4th Cir. 2004).

**ARGUMENT**

I.   **GLS IS A DELAWARE LIMITED LIABILITY COMPANY, NOT AN "UNINCORPORATED JOINT VENTURE," AND DYNCORP IS NOT LIABLE FOR ACTIONS OF GLS**

Assuming, *arguendo*, that Plaintiffs could state a claim against GLS as to any of their purported causes of action, any liability for actions of GLS would not extend to DynCorp.  As noted in the "Introduction" and "Factual Background" section above, Plaintiffs' allegation that there is a separate, unincorporated GLS joint venture entity is implausible and should be disregarded for purposes of the instant motion to dismiss.  The Court may take judicial notice of the fact that GLS is a Delaware limited liability company, and Plaintiffs admit that "Global Linguist Solutions, LLC [*sic*] ('GLS, LLC') is a Delaware limited liability company whose members are AECOM and DynCorp.  On information and belief, GLS, LLC contracts with the United States Government to provide linguists and translation services." Am. Compl., ¶ 40.

Plaintiffs' new theory that there is a separate, related "Global Linguist Solutions" or "GLS" that engages in the very same business as the Delaware LLC, with the same "parent" companies, but that is an unincorporated joint venture does not rise "above the speculative level" and is not "plausible on its face" as required to state a claim. *Twombly*, 550 U.S. at 555.  Global Linguist Solutions LLC's occasional use of shorthand in referring to itself as "Global Linguist Solutions" or "GLS", such as in the FSA contracts, does not change the analysis; to the contrary, the use of such a shorthand merely "allows a single entity to operate under multiple names." *Jones v. Imaginary Images, Inc.*, 3:12-CV-217, 2012 WL 3257888, at *7 (E.D. Va. Aug. 8, 2012) (citing *Tate v. Atlanta Oak Flooring Co.*, 18 S.E. 2d 903 (Va. 1942)).

Accordingly, Plaintiffs are legally incorrect in asserting that DynCorp is "liable for the liabilities of the joint venture to the same extent that partners are liable for the liabilities of the partnership." Am. Compl. ¶ 39.  The potential liability of a joint venturer with regard to an

unincorporated joint venture is irrelevant here, where the joint venture is incorporated as a limited liability company. *See Gowin v. Granite Depot, LLC,* 634 S.E.2d 714, 719 (Va. 2006) ("A limited liability company is an entity that, like a corporation, shields its members from personal liability based on actions of the entity.").

Under both Virginia and Delaware law, DynCorp is not liable for actions of GLS, absent exceptional circumstances not present here. Virginia's Limited Liability Company Act provides that "[t]he laws of the state or other jurisdiction under which a foreign limited liability company is formed govern its formation and internal affairs and the liability of its members and managers." Va. Code Ann. § 13.1-1051. Because GLS was formed in Delaware, the Delaware Limited Liability Act applies. *See Brainware v. Scan Optics*, No. 3:11-cv-755-REP-DJN, 2012 U.S. Dist. LEXIS 77337, at \*15 (E.D. Va. May 31, 2012) ("In Virginia, the law of the state of incorporation determines whether the corporate veil may be pierced.") (quoting *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 359 F. Supp. 2d 497, 501 n.6 (E.D. Va. 2005)) (additional citation omitted)). That statute provides that, unless agreed otherwise, "no member or manager of a limited liability company shall be obligated personally for any… liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company." Del. Code Ann. tit. 6, § 18–303. This is true regardless of whether the liabilities of the limited liability company arise in "contract, tort or otherwise." *Id.*   Delaware courts routinely apply enforce these principles. *See, e.g.*, *Wellman v. Dow Chem. Co.*, No. 05-280 SLR, 2007 U.S. Dist. LEXIS 19527, at \*5-6 (D. Del. Mar. 20, 2007) (dismissing employment discrimination action against the corporate parent of a joint venture that was formed as an LLC; plaintiff was an employee of the joint venture (not the corporate parent) and failed to plead facts to support piercing the LLC's veil); *Vichi v. Koninklijke Philips Elecs. N.V.*, No. 2578 VCP,

7

2009 Del. Ch. LEXIS 209, at *67 n.149 (Del. Ch. Dec. 1, 2009) ("To pierce the veil of the joint

venture, Vichi still would have to satisfy Delaware's strict veil piercing test.").[5]

## II.   PLAINTIFFS HAVE NOT ADEQUATELY PLED AN ALTER-EGO RELATIONSHIP BETWEEN GLS AND DYNCORP

Plaintiffs allege in conclusory fashion that "DynCorp exercises such significant dominion

and control over GLS such that, to the extent GLS, LLC purports to operate as a separate entity,

it in reality operates as an alter ego to DynCorp and DynCorp attempts to use the corporate shell

to unfairly limit its liability for the harms inflicted by GLS, LLC." Am. Compl., ¶ 41.  Even

assuming, solely for sake of argument, that Plaintiffs have alleged sufficient "dominion and

control" allegations in Paragraph 42 (quoted above in "Factual Background" section), their alter

ego theory of liability fails as a matter of law.

Plaintiffs allege no facts supporting the assertion that the "corporate shell" is used by

DynCorp to "unfairly limit its liability for the harms inflicted by GLS, LLC" and the Court

should ignore this allegation. "[T]he tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements" are insufficient.

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 555).

---

[5] The same result would obtain even if Virginia law applied, since Virginia, like Delaware,
shields members of limited liability companies from such companies' liabilities.  The Virginia
Limited Liability Company Act provides that no member of a limited liability company shall be
liable for "any liabilities of a limited liability company, whether such liabilities arise in contract,
tort or otherwise, solely by reason of being a member." Va. Code Ann. § 13.1-1019; *see also
McFarland v. Virginia Retirement Services of Chesterfield, LLC*, 477 F.Supp.2d 727, 740 (E.D.
Va. 2007) (dismissing wrongful termination claim against members of an LLC where plaintiff
failed to allege facts demonstrating members' individual culpability and merely alleged each
member's status as a member of the company); *Williams v. White (In re White)*, 412 B.R. 860,
864 (Bankr. W.D. Va. 2009) (declining to pierce the LLC's corporate veil because "[i]n Virginia,
a limited liability company is a legal entity separate and distinct from its members").

Moreover, Plaintiffs would have to plead much more than dominion and control or even that DynCorp's liability is "unfairly" limited to state a claim based on an alter ego theory of liability. Delaware law requires "an element of fraudulent intent in its alter ego test, as well as the traditional requirement that the corporation and its subsidiaries operated as a single economic entity" in order to establish alter ego liability. *Blair v. Infineon Techs. AG*, 720 F. Supp. 2d 462, 470 (D. Del. 2010); *see also Sears, Roebuck & Co. v. Sears*, 744 F. Supp. 1297, 1304 (D. Del. 1990) ("In order to reach a parent corporation under the alter-ego theory, the plaintiff must show fraud, injustice, or inequity in the use of the corporate form.").

Likewise, under Virginia law, the alter ego theory must be supported by factual allegations that: (1) the corporations were united by interest and ownership; and (2) the corporations were used to "evade a personal obligation, to perpetrate fraud or a crime, to commit an injustice, or to gain an unfair advantage." *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011) (quoting *C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 132 (4th Cir. 2002)). The Fourth Circuit has described this requirement as "a rigorous standard requiring proof that the defendant used the corporation to 'disguise' some legal 'wrong.'" *Perpetual Real Estate Servs., Inc. v. Michaelson Properties, Inc.*, 974 F.2d 545, 548 (4th Cir. 1992) (holding that an instruction that the jury could pierce the corporate veil if it found that the parent's control over the subsidiary perpetuated "an injustice or fundamental unfairness" was "rather soggy" and "failed to communicate the essence of Virginia law"). This second alter ego element must be pled in accordance with "the strictures of Fed. R. Civ. P. 9(b), which requires such allegations of fraud to be pleaded with particularity." *Oliver v. Omega Protein, Inc.*, No. 3:10-cv-47 REP/DWD, 2011 U.S. Dist. LEXIS 27621, *14-15 (E.D. Va. Jan. 31, 2011) (granting in part an alleged alter ego corporation's motion to dismiss for failure to

plead adequately that the corporations were used to perpetrate fraud). Here, Plaintiffs allege no facts even suggesting that the limited liability company status of GLS has been used to engage in wrongdoing or to disguise any legal wrong.

"[C]ourts routinely consider, and grant, motions to dismiss for failure adequately to allege facts sufficient to support the imputation of liability on an alleged alter-ego." *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 85-86 (S.D.N.Y. 2010); *see, e.g., Strikeforce Techs. Inc. v. Phonefactor, Inc.*, No. 13-490-RGA-MPT, 2013 U.S. Dist. LEXIS 162113, at *13-14 (D. Del. Nov. 14, 2013) (granting parent corporation's motion to dismiss because the complaint failed to "suggest[] fraud or injustice, []or alleg[e] any facts supporting either element. Consequentially, its alter ego theory is inadequate when measured against the requirements of Rule 12(b)(6)"); *Income Tax Sch., Inc. v. Lopez*, No. 3:12-cv-334, 2012 U.S. Dist. LEXIS 110779 (E.D. Va. Aug. 7, 2012) (granting a motion to dismiss for lack of personal jurisdiction due to failure to plead properly an alter ego theory); *SEC v. Woolf*, 835 F. Supp. 2d 111, 124-25 (E.D. Va. 2011) (granting a motion to dismiss where alter ego allegations were insufficient for failure to plead "unity of interest and ownership" or that the observance of the corporate form would sanction fraud); *Pyrotek, Inc. v. Motionmaster, Inc.*, No. 1:04-cv-00549, 2006 U.S. Dist. LEXIS 57007, at *18 (M.D.N.C. Feb. 22, 2006) ("[C]onclusory allegations that a corporate entity is the alter ego of the defendant are insufficient to survive a motion to dismiss.") (applying California law); *Richmond v. Indalex Inc.*, 308 F. Supp. 2d 648, 658 (M.D.N.C. 2004) ("Plaintiff's bare allegations of control are insufficient to allow Plaintiff to pierce [subsidiary company's] corporate veil so as to extend derivative liability to [parent company].") (applying North Carolina and Delaware law); *Thompson v. Quorum  Health Res., LLC,* , No. 1:06-cv-168, 2007 U.S. Dist. LEXIS 72376, *5 (W.D. Ky. Sept. 27, 2007) (granting motion to dismiss because

there were no factual allegations of "mere instrumentality" or "misuse of the corporate form" as required by Kentucky law).

Thus, Plaintiffs' single, conclusory suggestion that "DynCorp attempts to use the corporate shell to unfairly limit its liability for the harms inflicted by GLS, LLC" does not suffice.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE FLSA AGAINST DYNCORP

DynCorp adopts and incorporates herein the arguments contained in Argument Section I of the GLS Memorandum.

To state a claim against DynCorp for a violation of the FLSA, Plaintiffs must adequately plead that: (1) Plaintiffs were employed by DynCorp; (2) DynCorp is engaged in commerce; and (3) DynCorp failed to pay Plaintiffs for compensable hours worked. *See Wolman v. Catholic Health Sys. of Long Island, Inc.,* 853 F. Supp. 2d 290, 296 (E.D.N.Y. 2012) (citing 29 U.S.C. § 207(a)(1)). Thus, FLSA liability is predicated on an employer-employee relationship. *Schultz v. Capital Intern. Sec. Inc.*, 466 F.3d 298, 304 (4th Cir. 2006) (citing 29 U.S.C. §§ 206(a)(1), 207(a)(1)).

Here, the Amended Complaint contains no well-pled factual allegation to support the conclusion that DynCorp had an employer-employee relationship with Plaintiffs. Rather, the Amended Complaint alleges that all 25 Plaintiffs entered into employment contracts with GLS. *See* Am. Compl. ¶¶ 5-29.

The Amended Complaint veers erratically, and seemingly arbitrarily, between references to alleged actions by GLS versus those performed by "Defendants" collectively. The following are just a few out of a host of examples of the Amended Complaint's indiscriminate use of the term "Defendants":

11

45.     Plaintiffs are linguists who perform translation services pursuant to Defendants' contracts to provide translation services to the United States military.

\*\*\*\*

62.     Defendants routinely require Plaintiffs and absent class members to work more than forty-eight (48) hours of their week in service to Defendant.

\*\*\*\*

65.     Defendants, through GLS, initially in compliance with Kuwaiti law, entered into a sponsorship relationship with Al Shora ....[6]

\*\*\*\*

93.     The Fair Labor Standards Act, 29 U.S.C. § 201 et. seq [*sic*] ("the Act") requires that Plaintiffs and absent class members be compensated for work performed on behalf of Defendants as set forth in the Act.

\*\*\*\*

95.     Defendants' requirement that Plaintiffs work without payment of any compensation in a timely manner and/or without payment of overtime compensation in a timely manner is a violation of the Fair Labor Standards Act.

In analyzing the Amended Complaint for purposes of DynCorp's instant motion, the Court should ignore all references to "Defendants." Rule 8 requires that "[w]hen a complaint involves multiple parties and multiple claims, each claim should make it clear which defendant or defendants are alleged to have committed which wrong." *Washington v. Thomas*, No. 07-11302, 2009 U.S. Dist. LEXIS 128567, at *3 (E.D. Mich. April 22, 2009). For this reason, courts routinely dismiss claims that are collectively pled against multiple defendants without identifying which conduct is attributable to which defendant.

"A plaintiff does not satisfy Rule 8 when the complaint lump[s] all the defendants together and fail[s] to distinguish their conduct because such allegations fail to give adequate notice to the defendants as to what they did wrong." *Classen Immunotherapies, Inc. v. Biogen*

---

[6] This presumably is a reference to the GLS-Al Shora Subcontract. *See* Am. Compl. ¶¶ 65-72. *See* GLS-Al Shora Subcontract, Ex. 2 to the GLS Memorandum.

12

*IDEC*, 381 F. Supp. 2d 452, 455 (D. Md. 2005) (granting motion to dismiss); *see also Fox v. City of Greensboro*, 807 F. Supp. 2d 476 (M.D.N.C. 2011) (granting motion to dismiss for failure to allege specific conduct as to each defendant); *Davis v. Bowens*, No. 1:11-cv-691, 2012 U.S. Dist. LEXIS 101402 (M.D.N.C. July 23, 2012) (finding claim deficient where the complaint did not distinguish between the defendants); *Bryant v. Wells Fargo Bank, Nat'l Ass'n*, 861 F. Supp. 2d 646, 660 (E.D.N.C. 2012) ( "Plaintiffs' pleading of their RESPA claims against 'Defendants' generally . . . makes it difficult to ascertain what specific provision of RESPA the [] [d]efendants are alleged to have violated" in contravention of notice requirements of Federal Rule of Civil Procedure 8(a)).[7]

Thus, the Court's analysis of whether the Amended Complaint states a claim under the FLSA (or under any legal theory) against DynCorp should be limited to the few allegations specific to DynCorp. These allegations do not suffice on their own to plausibly state a claim. The allegations concerning DynCorp's actions vis-à-vis Plaintiffs are mainly set forth in Paragraph 42 of the Amended Complaint (quoted in full in the "Factual Background" section, above), which relate to support services DynCorp allegedly provides to GLS and that supposedly show its "dominion and control" of GLS for purposes of alter ego analysis. Because, as discussed above, these allegations do not state a claim for alter ego liability, they cannot be a basis to disregard GLS's corporate form. Moreover, none of these allegations shows that DynCorp employed Plaintiffs, as required for an FLSA claim, nor does the allegation that

---

[7] Federal courts outside of the Fourth Circuit recognize similar principles. *See, e.g., Melegrito v. CitiMortgage Inc.*, No. 11-01765 LB, 2011 U.S. Dist. LEXIS 60447 (N.D. Cal. June 6, 2011) (unpublished) ("Under Rule 8(a), grouping multiple defendants together in a broad allegation is insufficient to provide the defendants with fair notice. . . ."); *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1102 (C.D. Cal. 2011) (plaintiffs' "vague and unspecified references" to "defendants" did not satisfy Rule 8); *Weiszmann v. Kirkland & Ellis*, 732 F. Supp. 1540, 1549 (D. Colo. 1990) (granting motion for more definite statement because where "there are multiple defendants, the complaint should specify what conduct by each defendant gives rise to the asserted claim").

Plaintiffs were "paid directly by Dyncorp for work performed under each of their respective contracts" with GLS. Am. Compl. ¶ 3.

Plaintiffs further allege that "during the mandatory training periods, Plaintiffs and absent contractors are confined within a DynCorp training facility and are not free event [*sic*] to come and go at their own will." Am. Compl. ¶ 59. These also are not allegations that DynCorp employed Plaintiffs, as required for an FLSA claim. In addition, there are no allegations regarding the dates of their alleged training in the U.S. or the specific amount of hours purportedly worked in excess of forty per week that were worked during training, or the locations where the alleged training occurred. *See, e.g.*, *Jones v. Imaginary Images, Inc.*, Action No. 3:12-CV-217, 2012 U.S. Dist. LEXIS 111682, at *33 (E.D. Va. Aug. 8, 2012) (dismissing FLSA claim because the plaintiff "fail[ed] to indicate the compensation he was entitled to or the number of hours he worked without compensation").

In sum, even assuming the truth of the relatively few specific factual allegations regarding DynCorp, Plaintiffs' FLSA (and all other) claims run afoul of *Twombly*'s requirement that factual allegations "must be enough to raise a right to relief above the speculative level" with the complaint having "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE KUWAITI LABOR LAW AGAINST DYNCORP

DynCorp adopts and incorporates herein the arguments contained in Argument Section II of the GLS Memorandum. In addition to all of these reasons that the Kuwaiti Labor Law claims fail as to all Defendants, they fail against DynCorp for the same reasons that the FLSA claims fail. Most important, there are no well-pled facts showing that DynCorp—as opposed to "Defendants"—employed Plaintiffs, in Kuwait or elsewhere.

V.   **PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT AGAINST DYNCORP**

DynCorp adopts and incorporates herein the arguments contained in Argument Section III of the GLS Memorandum.  In addition, as discussed above herein, all 25 Plaintiffs allege that their employment contracts are with GLS.  *See* Am. Compl. ¶¶ 5-29.  They do not allege that they entered into a contract with DynCorp.  The FSAs reflect that GLS is listed as the Employer, and DynCorp appears nowhere in these contracts.  *See* Ex. 1 to the GLS Memorandum.  Thus, there are no well-pled allegations that DynCorp owed a contractual obligation to Plaintiffs, or breached any such obligation.  Count III must therefore be dismissed as against DynCorp.

VI.   **PLAINTIFFS FAIL TO STATE CLAIMS AGAINST DYNCORP FOR TORTIOUS INTERFERENCE WITH AN EXISTING CONTRACT AND TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

DynCorp adopts and incorporates herein the arguments contained in Argument Sections IV and V of the GLS Memorandum.  In addition, the claims for tortious interference with existing contract and tortious interference with prospective economic advantage must be dismissed as to DynCorp.  Under Virginia law, a plaintiff claiming tortious interference with an existing contract must show that: (1) there was a valid contractual relationship or business expectancy between the plaintiff and a third party; (2) the defendant knew of that relationship or expectancy; (3) the defendant intentionally interfered with that relationship or expectancy, inducing or causing its breach or termination; and (4) the plaintiff was damaged as a result of this interference.  *See Lewis-Gale Medical Center, LLC v. Alldredge*, 710 S.E. 2d 716, 720 (Va. 2011).  Here, Plaintiffs do not allege that DynCorp—as opposed to "Defendants"—knew of any contractual relationship or business expectancy of Plaintiffs, or intentionally interfered with that relationship or expectancy.

Plaintiffs also have failed to state a claim for tortious interference with prospective

economic advantage against DynCorp.  To state a claim for tortious interference with prospective economic advantage under Virginia law, a plaintiff must plead that: (1) a "business relationship or expectancy, with a probability of economic benefit" existed; (2) the defendant knew about the relationship or expectancy; (3) there was a "reasonabl[e] certain[ty] absent intentional misconduct, the claimant would have continued in the relationship or realized the expectancy"; (4) the interference damaged the plaintiff; and (5) the defendant used "improper means" to interfere with the prospective economic advantage. *Shirvinski v. U.S. Coast Guard*, No. 1:09-CV-896 AJT TRJ, 2010 U.S. Dist. LEXIS 113629, at *25 (E.D. Va. Oct. 25, 2010), *aff'd*, 673 F.3d 308 (4th Cir. 2012).  Courts in this district also have recognized two additional *de facto prima facie* elements of this tort: namely, there must be (6) a competitive relationship between the party interfered with (the plaintiff) and the alleged interferer (the defendant); and (7) a contact between the defendant and the source of the plaintiff's business expectancy. *See 17th St. Associates, LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 600-01 (E.D. Va. 2005).

Here, Plaintiffs have not alleged any of these elements as to DynCorp.  Accordingly, Counts IV and V must be dismissed against DynCorp.

## VII.   PLAINTIFFS FAIL TO STATE A CLAIM FOR *QUANTUM MERUIT* COMPENSATION AGAINST DYNCORP

Plaintiffs also fail to state a claim against DynCorp under a theory of *quantum meruit*. DynCorp adopts and incorporates herein the arguments contained in Argument Section VI of the GLS Memorandum.

In addition, to obtain *quantum meruit* recovery in Virginia, a plaintiff must show that (1) "he conferred a benefit on the defendant;" (2) "the defendant knew of the benefit and should reasonably have expected to repay the plaintiff for it;" and (3) "the defendant accepted or retained the benefit without paying for its value." *Lion Assocs., LLC v. Swiftships Shipbuilders,*

*LLC*, 475 F. App'x. 496, 503 (4th Cir. 2012) (quoting *Schmidt v. Household Fin. Corp., II*, 661

S.E. 2d 834, 838 (Va. 2008)) (quotation marks omitted).  A plaintiff cannot recover under this

theory, however, "when an express contract exists that governs payment for the services

rendered." *Id.* (citing *Mongold v. Woods*, 677 S.E. 2d 288, 292 (Va. 2009)).

Here, Plaintiffs suggest obliquely that they conferred a benefit on DynCorp when they

were detained by the Kuwaiti authorities.  However, the Amended Complaint contains no facts

indicating that DynCorp received any such benefit, or that DynCorp knew of any such benefit or

had any expectation of having to repay Plaintiffs for it.  As discussed throughout this

memorandum, Plaintiffs allege their employment contracts were with GLS, not DynCorp.  To the

extent Plaintiffs arguably would be entitled to payment during the period of their detention, this

would be governed by their employment contracts with GLS, not through a *quantum meruit*

theory against DynCorp.

## VIII.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST DYNCORP FOR STATUTORY BUSINESS CONSPIRACY

DynCorp adopts and incorporates herein the arguments contained in Argument Section

VII of the GLS Memorandum.

In addition to the reasons presented by GLS, the statutory business conspiracy claim must

be dismissed against DynCorp because the Amended Complaint includes no specific allegations

as to DynCorp that would be relevant to such a claim.  In this Count, Plaintiffs assert merely that

"Defendants, Defendants' managers and Defendants' legal counsel" have conspired to "willfully

injur[e] certain Plaintiffs in their reputation, trade, business, and profession" by "having such

Plaintiffs serve as Plaintiffs in a lawsuit against Al Shora, by forcing Plaintiffs to execute

'confessions' to criminal activity while in Kuwait, and by causing the Plaintiffs and members of

the putative class to be in Kuwait illegally, through no fault of their own." Am. Compl. ¶ 144.

17

However, in the "Allegations" section of the Amended Complaint Plaintiffs allege specifically that "GLS management" presented the allegedly inaccurate "confessions" to certain Plaintiffs and that "GLS insisted" that these Plaintiffs sign the documents; there is no mention of DynCorp in connection with this activity, either as a direct participant or remote "conspirator." Am. Compl. ¶ 85. Plaintiffs' conspiracy allegations fail to meet the basic pleading requirements of Rule 8, and fall far short of meeting the "heightened pleading requirement" required by Virginia's business conspiracy statute. *See Whitaker v. Sheild,* NO. 4:05-cv-130, 2006 U.S. Dist. LEXIS 101055, at *36 (E.D. Va. May 3, 2006) (at minimum, plaintiffs must plead the "factual basis of the method of the alleged conspiracy and how it was carried out").

Like the other counts, Count VII must be dismissed as against DynCorp.

## IX. PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE AND GROSS NEGLIGENCE AGAINST DYNCORP

DynCorp adopts and incorporates herein the arguments contained in Argument Section VIII of the GLS Memorandum. In addition to the reasons presented by GLS, Plaintiffs failed to allege that DynCorp—as opposed to "Defendants"—breached any duty that proximately caused Plaintiffs any damages and/or engaged in any "wanton or reckless" conduct that would constitute gross negligence. Count VIII must be dismissed as against DynCorp.

## X. PLAINTIFFS FAIL TO STATE A CLAIM FOR FALSE IMPRISONMENT AGAINST DYNCORP

DynCorp adopts and incorporates herein the arguments contained in Argument Section IX of the GLS Memorandum. Additionally, Plaintiffs failed to state a claim for false imprisonment against DynCorp because they failed to allege that they were directly restrained by DynCorp. Count IX must be dismissed as against DynCorp.

XI.   **PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DYNCORP**

DynCorp adopts and incorporates herein the arguments contained in Argument Section X of the GLS Memorandum.  In addition, Plaintiffs failed to allege that DynCorp—as opposed to "Defendants"—acted negligently or that they sustained any actual physical injuries resulting from their claimed emotional distress that are separate and distinct from the alleged physical symptoms of that emotional distress.  Count X must be dismissed as against DynCorp.

XII.  **PLAINTIFFS FAIL TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DYNCORP**

DynCorp adopts and incorporates herein the arguments contained in Argument Section XI of the GLS Memorandum.  Additionally, Plaintiffs failed to allege that DynCorp—as opposed to "Defendants"—engaged in any reckless conduct, let alone any outrageous or intolerable conduct that resulted in emotional distress sufficient to sustain a claim for intentional infliction of emotional distress.  Count XI must be dismissed as against DynCorp.

XIII. **PLAINTIFFS FAIL TO STATE A CLAIM FOR INJUNCTIVE RELIEF AGAINST DYNCORP**

DynCorp adopts and incorporates herein the arguments contained in Argument Section XII of the GLS Memorandum.   In addition, DynCorp notes that "injunctive relief is not a separate cause of action."  *Mamo v. BP P.L.C.*, 1:05-cv-1323 JCC, 2006 U.S. Dist. LEXIS 7169, at *9 (E.D. Va. Jan. 30, 2006) (dismissing injunctive relief count for failure to state a claim). Moreover, Plaintiffs have failed to state any claim against DynCorp upon which injunctive relief could be based.  Count XII must be dismissed as against DynCorp.[8][9]

---

[8] Similarly, Plaintiffs' demand for punitive damages must be stricken or dismissed as against DynCorp because there are no allegations against DynCorp of the type of willful, malicious, reckless or egregious conduct that is required under Virginia law to justify such extraordinary damages.  Virginia law "does not favor imposing punitive damages, which may 'be awarded only in cases of the most egregious conduct.'"  *Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 217 (E.D. Va. 2008) (quoting *Owens-Corning Fiberglas Corp. v. Watson*, 413 S.E. 2d 630,

19

## Conclusion

For all of the foregoing reasons, and for those set forth in Defendant Global Linguist

Solutions LLC's Memorandum in Support of its Motion to Dismiss, DynCorp respectfully

requests that the Court dismiss, with prejudice, all counts of Plaintiffs' Amended Complaint as

against DynCorp.

Dated: November 29, 2013

_____/s/ Kathleen A. Waldy_____
Kathleen Waldy (Va. Bar No.: 75539)
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
(703) 280-9268 (voice)
(703) 280-9139 (facsimile)
kwaldy@wtplaw.com

Dwight W. Stone, II (*pro hac vice*)
Dennis M. Robinson, Jr. (*pro hac vice*)
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland  21202
410-347-8700 (voice)
410-752-7092 (facsimile)
dstone@wtplaw.com
drobinson@wtplaw.com

*Attorneys for Defendant*
*DynCorp International LLC*

---

639 (Va. 1992)).  A plaintiff seeking punitive damages must show that the defendant's conduct was "malicious, reckless, or so negligent that it 'evince[s] a conscious disregard of the rights of others.'"  *Id.* (quoting *Simbeck, Inc. v. Dodd Sisk Whitlock Corp.*, 508 S.E.2d 601, 604 (Va. 1999)).  Here, there are no well-pled facts to support such relief against DynCorp.  Accordingly, the Court should strike or dismiss Plaintiffs' demand for punitive damages.

[9] Because Plaintiffs have failed to assert a valid claim against DynCorp, Plaintiffs also have failed to set forth any basis upon which a class could be certified.  In the event that DynCorp's Motion to Dismiss is denied in whole or in part, DynCorp reserves all of its rights to present the numerous additional reasons why certification of a collective action or class action would be inappropriate.

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of November, 2013, I electronically filed the foregoing with the Clerk of the Court for the Eastern District of Virginia using the CM/ECF system, which sent a notification of such filing (NEF) to the following:

John Joseph Beins
Beins Goldberg & Hennessey LLP
2 Wisconsin Cir., Suite 700
Chevy Chase, MD 20815
jbeins@bghllp.com

*Attorneys for Plaintiffs*


Attison Leonard Barnes, III
Wiley Rein LLP (DC)
1776 K Street, NW
Washington, DC 20006
abarnes@wileyrein.com

*Attorneys for Defendant,*
*   AECOM National Security Programs, Inc.*


Andrea Ruth Lucas
Jason Craig Schwartz
Gibson Dunn & Crutcher LLP (DC)
1050 Connecticut Ave NW, Suite 300
Washington, DC 20036-5306
jschwartz@gibsondunn.com
alucas@gibsondunn.com

*Attorneys for Defendant,*
*   Global Linguist Solutions LLC*

        /s/ *Kathleen A. Waldy*
Kathleen A. Waldy (Va. Bar No.: 75539)
Whiteford, Taylor & Preston, LLP
3190 Fairview Park Drive, Suite 300
Falls Church, Virginia 22042
(703) 280-9268 (voice)
(703) 280-9139 (facsimile)
kwaldy@wtplaw.com